STEWART, J.
 

 | ,This appeal arises from a trial court judgment in favor of the plaintiffs, Glenn and Carolyn Britt, and against the defendant, the City of Shreveport (“City”). The suit concerns damages resulting from a tree falling on Carolyn Britt’s car. The City now appeals the trial court’s judgment. For the reasons stated herein, we affirm.
 

 FACTS
 

 On August 5, 2003, Carolyn Britt was traveling on Thornhill Street toward a crew of City employees, who were engaged in trimming a tree. One of the employees signaled Mrs. Britt to proceed through the area. While she was passing, a large tree limb, approximately three feet in diameter and ten feet in length, fell and landed on top of her vehicle. Mrs. Britt did not
 
 *79
 
 receive any medical attention at the scene of the accident, choosing instead to call her daughter to pick her up from the accident scene and take her home.
 

 As a result of the accident, Mrs. Britt sustained multiple injuries to her head, neck, shoulder, lower back, and legs. Her vehicle, a 1991 Astrovan, sustained about $3,500.00 in damages, and was declared a total loss.
 

 On August 13, 2003, Mrs. Britt sought treatment for the first time from a local chiropractor, Dr. John A. Thompson. Dr. Thompson diagnosed Mrs. Britt with a cervical sprain/strain with muscle spasms; a lumbar sprain/strain with moderate to severe muscle splinting/spasming across the left SI level and lumbar radiculitis with pain along the L5 nerve root into the left hip and lower extremity; a thoracic sprain/strain with muscle 12splinting/spasming along the paraspinals; and headaches. After providing chiropractic treatment to Mrs. Britt from August 13, 2003, to December 8, 2003, Dr. Thompson noted remarkable improvements in the cervical and thoracic regions, as well as a decrease in headaches.
 

 Dr. Thompson referred Mrs. Britt for an MRI of the lumbar region, so that he could isolate the source of her complaints. Mrs. Britt did not have the suggested MRI. Dr. Thompson released Mrs. Britt from his care, since she was not improving in the lumbar region.
 

 Approximately six months after the August 5, 2003, accident, Mrs. Britt sought treatment from Dr. Richard Kamm. At her initial visit, Mrs. Britt complained of neck pain, lumbar pain with pain radiating into her left buttock and posterior thigh, and headaches. Dr. Kamm instructed her to avoid any activity that produced pain or discomfort to the affected areas, including lifting, bending, and stretching. Additionally, he instructed her to apply cold to the affected areas and prescribed her the medications Bextra, Soma, and Lortab.
 

 On February 11, 2004, Mrs. Britt returned to Dr. Kamm complaining that there weren’t any improvements in her physical condition. Dr. Kamm recommended that she be evaluated by an orthopedic surgeon or neurosurgeon. Dr. Kamm also recommended an MRI of the lumbar region. On April 21, 2004, Mrs. Britt returned to Dr. Kamm for a followup visit. Again, she reported no change in her physical condition. She also informed him that she had not made an appointment for her MRI, but she had seen Dr. Austin Gleason, an orthopedist, as requested.
 

 Is At time of her next appointment with Dr. Kamm on June 16, 2004, Mrs. Britt had not scheduled her MRI. On September 4, 2004, Mrs. Britt informed Dr. Kamm that the severity and frequency of her headaches had decreased and that she also had the MRI. However, she had not scheduled a follow-up appointment with Dr. Gleason to receive the results of the MRI. She also told him that Dr. David Adams performed a nerve conduction study, which was negative. After Dr. Kamm reviewed the MRI, he determined that she had received maximum medical improvement under his care and that she should see Dr. Gleason for further treatment.
 

 Mrs. Britt initially began treatment with Dr. Austin Gleason on March 9, 2004. After a physical examination, Dr. Gleason diagnosed her with chronic neck and back syndrome. He recommended an MRI of the lumbar spine. During her follow-up visit with Dr. Gleason on August 23, 2004, she complained of pain in her back with radiation into her left hip and leg, down to the calf. The MRI showed multi-level degenerative changes with only moderate spinal stenosis. Dr. Gleason opined that Mrs. Britt was not a candidate for surgery
 
 *80
 
 at that time and recommended conservative management. He gave her a prescription for Neurontin and advised her to return in three weeks to check the progress of the medication. Mrs. Britt did not have the prescription filled, nor did she return for a follow-up visit.
 

 On November 8, 2004, Mrs. Britt sought medical treatment from Dr. Marco Ramos, a neurosurgeon. Dr. Ramos diagnosed her with probable cervical myelopathy, secondary to lumbar and lumbosacral radi-culopathy. He requested an MRI of her cervical spine. The MRI revealed a herniated |4nucleus pulposus and osteophyte at the C5-C6 and C6-C7 levels, a corpectomy at C6 and a strut fusion to be followed by anterior instrumentation from C5-C7. Even though Dr. Ramos reviewed the same MRI that Dr. Gleason reviewed, he recommended surgery to correct these problems.
 

 Mrs. Britt’s counsel referred her to Doug Tietjen, a physical therapist, for functional capacity examination. Tietjen determined that she was not a candidate for functional capacity testing, and suggested that she be enrolled in a physical therapy rehabilitation program with emphasis on McKenzie mobilization, exercises and traction. Mrs. Britt never enrolled in the recommended physical therapy rehabilitation program.
 

 The City hired Dr. Anil Nanda to perform an independent medical examination on Mrs. Britt. This examination took place on August 7, 2007. Based on Mrs. Britt’s complaints and a review of the MRI, Dr. Nanda determined that Mrs. Britt had a tightness at C3-4, C5-6, C6-7, and L5-S1. Dr. Nanda noted that there were many alternative means of rehabilitating Mrs. Britt’s symptoms, such as physical therapy. He commented that surgery should be the last alternative. The City also retained Terry Eberhardt, a physical therapist who also opined that physical therapy is the favored means of rehabilitating Mrs. Britt.
 

 Mrs. Britt, along with her husband Glenn Britt, filed a petition to recover damages resulting from personal injuries to Mrs. Britt, including pain and suffering, medical expenses, lost wages, loss of earning capacity and loss of enjoyment in life. The City stipulated to total fault in this action |sfor the August 5, 2003, accident. On July 10, 2009, the trial court awarded Mrs. Britt $371,963.96 in general and special damages. Mr. Britt was awarded $10,000 for loss of consortium. The trial court also assessed the costs, interests and fees of the medical experts against the City.
 

 The City now appeals, asserting four assignments of error.
 

 LAW AND DISCUSSION
 

 Mitigation of Damages/Failure to Undergo the Recommended Surgery
 

 In the City’s first assignment of error, it asserts that the trial court erred in finding that it only proved in part that Mrs. Britt had not dutifully mitigated her damages. More specifically, the City argues that the medical evidence proves that had Mrs. Britt submitted to the recommended physical therapy regimen, she would have had a 50% chance of not needing the recommended cervical and lumbar surgeries.
 

 Similarly, in the third assignment of error, the City argues that the trial court erred in determining that Mrs. Britt was justified in refusing to undergo the recommended surgery because she would have to expend her own money to pay for the medical treatment. Since the first and third assignments of error both relate to Mrs. Britt’s duty to mitigate her damages,
 
 *81
 
 we will discuss these interrelated issues together.
 

 It is well settled that a court of appeal may not set aside a trial court’s finding of fact in the absence of “manifest error” or unless such finding is “clearly wrong,” and where there is a conflict in the testimony, reasonable inferences of credibility and reasonable inferences of fact should not be disturbed on review, even though the appellate court may feel that its own | (¡evaluations and inferences are as reasonable.
 
 Crownover v. City of Shreveport,
 
 43,521 (La.App. 2 Cir. 9/17/08), 996 So.2d 315;
 
 Stobart v. State, through Department of Transportation and Development,
 
 617 So.2d 880 (La.1993). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.
 
 Neloms v. Empire Fire & Marine Ins. Co.,
 
 37,786 (La.App. 2 Cir. 10/16/03), 859 So.2d 225. In fact, where two permissible views of evidence exist, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
 
 Stobart, supra.
 

 An injured party has a duty to take reasonable steps to mitigate her damages.
 
 Fletcher v. Simmons,
 
 37,758 (La.App. 2 Cir. 10/29/03), 859 So.2d 292;
 
 Aisole v. Dean,
 
 574 So.2d 1248 (La.1991). However, the burden rests on the tortfea-sor to show that the injured plaintiff failed to mitigate his damages. The defendant must show (1) that the plaintiffs conduct after the injury was unreasonable and (2) that the unreasonable conduct had the consequence of aggravating the harm.
 
 Fletcher, supra.
 

 The victim does, indeed, have an affirmative responsibility to make every reasonable effort to mitigate damages, but the care and diligence required of him are the same as that which would be used by a man of ordinary prudence under like circumstances.
 
 Sepulvado v. Turner,
 
 37,912 (La.App. 2 Cir. 12/10/03), 862 So.2d 457. The victim need not make extraordinary efforts or do what is unreasonable or impractical in his efforts |7to minimize the damages, but his efforts to minimize them must be reasonable and in accordance with the rules of common sense.
 
 Id.
 

 Thus, his recovery will not be limited because of a refusal to undergo medical treatment that holds little promise for successful recovery.
 
 Jacobs v. New Orleans Public Service,
 
 432 So.2d 843 (La.1983). The expense and inconvenience of treatment are also proper considerations in determining the reasonableness of a person’s refusal to submit to treatment.
 
 Id.
 
 Moreover, an unreasonable refusal of medical treatment which does not aggravate his injury will not restrict a victim’s recovery.
 
 Id.
 
 The tortfeasor has the burden of showing both the unreasonableness of the victim’s refusal of treatment and the consequent aggravation of the injury.
 
 Id.
 

 As stated above in the facts section, Mrs. Britt never commenced the physical therapy program recommended by Tietjen. Mrs. Britt stated that she did not have the financial means to pay for the physical therapy or the corrective surgery. The Britts listed the cost of the cervical surgery and subsequent care at $29,400.00 and the cost of the lumbar surgery and subsequent care at $27,600.00. Even though Mr. Britt testified that the couple had approximately $52,000.00 in a checking account at the time of the accident, it had been reduced to $3,000.00 from paying bills as a result of Mrs. Britt being unable to work. The Britts testified that they were using their savings to cover living expenses. Mrs. Britt had also accumulated $12,769.96 in unpaid medical bills at the
 
 *82
 
 time of the trial. Additionally, the Britts had to obtain a loan to purchase a vehicle to replace the one involved in the accident.
 

 |sThe trial court made the following findings in its ruling regarding Mrs. Britt’s duty to mitigate damages:
 

 The defense has proven, in part, that Mrs. Britt has not dutifully mitigated her damages. While at her age and health Mrs. Britt has understandable trepidation of the lumbar and cervical surgeries, and while both she and Mr. Britt may be justifiably reluctant to exhaust their somewhat modest life savings on two surgeries and a physical therapy -regimen, the Court is of the belief that without those courses of action, Mrs. Britt will never recover ... Because the Court finds that Mrs. Britt has not scrupulously made reasonable efforts in some respects to mitigate damages, her damages are accordingly reduced and the Court factors that finding into analysis particularly in setting general damages ...
 

 While the trial court sympathized with the Mrs. Britt’s trepidation of the lumbar and cervical surgeries, as well as the subsequent physical therapy regimen, it did not agree that such trepidation justified Mrs. Britt’s refusal to submit to the necessary treatment. For that reason, the trial court found that Mrs. Britt failed to reasonably mitigate her damages and reduced her damages accordingly. The City asserts that the trial judge erroneously failed to indicate the percentage by which he reduced the damage award after finding that Mrs. Britt failed to mitigate her damages, and argues that the damage award should be reduced at a minimum of 50%.
 

 In reviewing a damages award, an appellate court must first look at the individual circumstances of that case.
 
 Campbell v. Webster Parish Police Jury,
 
 36,391 (La.App. 2 Cir. 9/18/02), 828 So.2d 170. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury of the particular plaintiff under the particular circumstances that the appellate court should ^increase or reduce the award.
 
 Hunt v. Safeway Ins. Co.,
 
 35,306 (La.App. 2 Cir. 12/5/01), 804 So.2d 724;
 
 Crownover, supra.
 

 Only after an abuse of discretion is disclosed by an articulated analysis of the facts is an examination of prior awards in similar cases proper. An abusively low award is raised to the lowest amount the trier of fact could have reasonably awarded, while an abusively high award is reduced to the highest amount the trier of fact could have reasonably awarded.
 
 Hunt, supra; DeYoung v. Simons,
 
 32,378 (La.App. 2 Cir. 10/27/99), 743 So.2d 851. The proper procedure for examining whether an award is excessive is to determine whether the amount can be supported under the interpretation of the evidence, most favorable to the plaintiff, which reasonably could have been made by the trier of fact.
 

 After a careful review of the entire record, we find no abuse of discretion in the general damage award amounting to $185,000.00 and do not find it necessary to make a comparison with similar cases. Mrs. Britt has been living in an unbearable amount of pain since the August 5, 2003, accident. She has been unable to take care of herself, her family, and her household. Even her disposition has changed.
 

 We agree with the trial court’s determination that Mrs. Britt failed to reasonably mitigate her damages and find that it correctly reduced the damage award by taking her failure to mitigate into account when determining the award. Therefore, assignments of error one and three are meritless.
 

 
 *83
 

 11(VPre-existing Condition
 

 The City contends in its second assignment of error that the trial court erred in its general damage award to Mrs. Britt because it is excessive under the circumstances of her pre-existing condition. The City believes that Mrs. Britt’s bulging disc protrusions and lumbar pain were pre-existing conditions from a car accident that she was involved in on March 2, 1995. Regarding the general damages award, the City urges that the $185,000.00 award is greatly disproportionate when compared to awards in other cases involving similar circumstances and injuries.
 

 “General damages” are those which are inherently speculative in nature and cannot be fixed with mathematical certainty, including pain and suffering.
 
 Hunt, supra; Moody v. Blanchard Place Apartments,
 
 34,587 (La.App. 2 Cir. 6/20/01), 793 So.2d 281. When damages are insusceptible of precise measurement, much discretion shall be left to the court for the reasonable assessment of these damages. La. C.C. art. 1999. In the assessment of damages in cases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. This discretion is great, even vast, so that an appellate court should rarely disturb an award of general damages.
 
 Crownover, supra.
 

 It is a well established principle of law that a tortfeasor takes his victim as he finds her; and, although the damages caused are greater because of the victim’s prior condition, which is aggravated by the tort, the tortfeasor is, nevertheless, responsible for the consequences of his tort.
 
 Sepulvado, supra.; Aisole, supra.
 

 InDr. Ramos stated in his deposition that the August 5, 2003, accident caused Mrs. Britt’s problems with her neck and back, making surgery necessary. Dr. Kamm agreed that the neck problems were caused by the August 5, 2003, accident and deferred to Dr. Ramos regarding the back condition. Additionally, Mr. Britt testified that Mrs. Britt continued to work after the March 2, 1995, accident without taking any time off. The Britts’ daughter also testified that Mrs. Britt was not having any neck or back problems prior to the August 5, 2003, accident.
 

 Mrs. Britt testified that after the August 5, 2003, accident, she was unable to work and enjoy her life. The record reveals that Mrs. Britt was able to do both of those things prior to the August 5, 2003, accident.
 

 We conclude that the $185,000.00 general damage award was a not an abuse of the trial court’s discretion. Mrs. Britt has demonstrated that her injuries were caused by the accident in question. This assignment of error is without merit.
 

 Loss of Consortium
 

 The City alleges that the trial court erroneously awarded Mr. Glen Britt damages in the amount $10,000.00, since he withdrew his claim for loss of marital relations. The City asserts that Mr. Britt’s loss of consortium claim is worth no more than $3,000.00 and requests that we reduce the trial court’s award to this amount.
 

 In general, a claim for loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of | ^financial support, (6) loss of aid and assistance, and (7) loss of fidelity. To be compensable, it is not necessary for a claim for consortium to include damages from each type of loss.
 
 Crownover, supra.
 
 A loss of consortium award is a fact-specific determination, to be decided case-by-case and is disturbed
 
 *84
 
 only if there is a clear showing of an abuse of discretion.
 
 Bassett v. Toys “R” Us Delaware, Inc.,
 
 36,434 (La.App. 2 Cir. 12/30/02), 836 So.2d 465.
 

 Mr. Britt withdrew a portion of his loss of consortium claim, which involved marital relations, for unspecified reasons. Even though Mr. Britt withdrew his claim for loss of marital relations, he maintained the remainder of the consortium claim.
 

 We find that the trial court was not manifestly erroneous in awarding $10,000.00 for Mr. Britt’s loss of consortium claim. The August 5, 2003, accident significantly affected the Britts’ 29-year marriage. Mr. Britt testified that Mrs. Britt’s condition has not improved since the accident and noted that her disposition has changed. Mr. Britt had to assume all of the household activities. Mrs. Britt even agreed that she was not the companion to Mr. Britt that she once was. Their daughter, Glendale, also testified that her parents’ relationship had changed.
 

 For these reasons, we will not disturb the trial court’s award to Mr. Britt of $10,000.00 for his loss of consortium claim. This assignment of error is without merit.
 

 | ^CONCLUSION
 

 For the reasons assigned, we affirm the judgment of the trial court. Total costs of this appeal are assessed against the City of Shreveport in accordance with La. R.S. 13:5112 in the amount of $221.50.
 

 AFFIRMED.