WILLIAMS, J.
| defendants, Mark S. Escalón, ARI Fleet LT and Discover Property and Casualty, appeal the trial court’s award of damages to plaintiffs. For the following reasons, we affirm.
FACTS
On November 30, 2009, plaintiff, Troy Smith, was injured in an automobile accident in Jackson Parish, Louisiana. Plaintiff, who was driving a Chevrolet Corvette, was rear-ended by defendant, Mark Escal-ón, who was driving a Toyota pickup truck. *579 The pickup truck was owned by Escalon’s employer, ARI Fleet LT.
Following the accident, Smith presented to the emergency room at Jackson Parish Hospital complaining of back pain related to the accident. The x-rays taken in the emergency room did not reveal any fractures; Smith received a prescription for pain medication and was released. Smith’s pain persisted for several months. Subsequently, Smith was seen by a nurse practitioner, who later referred him to Dr. James Hardy Gordon, an interventional pain specialist, at Louisiana Pain Care in Monroe. Plaintiff underwent physical therapy for several weeks. Although his pain persisted after he completed physical therapy, Smith declined further treatment.
On October 1, 2010, plaintiff and his wife, Carla Smith, filed this lawsuit, alleging that Smith sustained personal injuries as a result of the accident; Mrs. Smith alleged loss of consortium. Escalón, ARI Fleet LT and its insurer, Discover Property and Casualty, were named as defendants. Prior to the trial, the parties stipulated that Escalón was solely at fault in causing the accident.
|2The matter proceeded to trial on the sole issue of damages. Smith testified that the accident changed his life. He stated that he was no longer able to stand for long periods of time, work in his yard, maintain his vehicles or perform household chores. He also testified that he experienced pain for approximately six months after the accident, and he continued to experience pain at the time of trial, albeit to a lesser degree. Additionally, Smith testified that he preferred having his life the way it was prior to the accident, rather than receiving a monetary award.
Mrs. Smith testified that she and her husband had been married since 1982. She admitted that her husband had significant health-related issues prior to the accident. However, she stated that he was not experiencing any problems in the months leading up to the accident. Mrs. Smith stated that Mr. Smith continued to have pain for weeks after the accident and was having increasing difficulty doing things around the house. Mrs. Smith testified that prior to the accident, her husband did the majority of the yard work, but since the accident, he was no longer able to do so. Additionally, she stated that Mr. Smith was unable to perform many of the household chores as a result of the accident. Mrs. Smith further testified that her husband made an appointment with a local doctor, who referred him to Dr. Gordon in Monroe. She stated that Dr. Gordon prescribed pain medication, and her husband took the pills at first; however, after a while, he stopped taking them, electing to “deal with” the pain. On cross-examination, Mrs. Smith testified that the accident did not affect her marriage in any way. On recross-examination, she testified that she never stopped loving her husband [.¡because of the accident, and they never had any disagreements because of the accident.
Plaintiffs introduced into evidence the deposition testimony of Dr. Gordon, the pain specialist who treated Smith at Louisiana Pain Care. Dr. Gordon testified that he began treating Smith in March 2010. He also testified that Smith had a history of back pain, having undergone vertebro-plasty for compression fractures at T8 and T9.[1] Dr. Gordon noted that Smith reported an initial gradual onset of back pain following the car accident; however, the pain had increased significantly. Smith *580 also reported that he was unable to stand for long periods of time, and the pain could only be relieved by lying flat. According to Dr. Gordon, he ordered magnetic resonance imaging (“MRI”) of the “thoracic and lumbar spine to rule out any acute pathology.” He also wanted to “rule out any recurrence of vertebral compression fractures or any acute disc herniations [and/or] facet arthropathy[.]” Dr. Gordon testified that Smith returned for a followup visit on March 24, 2010. During that visit, Dr. Gordon noted that Smith’s pain continued. Dr. Gordon also noted that he discussed the MRI findings with Smith. According to Dr. Gordon, the MRI showed mild degenerative disc disease and some narrowing in the spinal column. Dr. Gordon testified that he did not know how long the discs had been degenerating or when the narrowing began; therefore, he could attribute neither condition to the automobile accident. The MRI also showed that Smith had a compression fracture, which Dr. Gordon opined had probably occurred more than six |4months prior to the date of the MRI. Nonetheless, Dr. Gordon stated, “In my opinion, I feel like he had obvious chronic changes that preceded the accident, but I do feel as though they were exacerbated to some point with the accident.” Dr. Gordon noted that Smith expressed that he did not want to have back surgery. Rather, Smith opted for conservative treatment; therefore, Dr. Gordon prescribed an anti-inflammatory medication, a muscle relaxant and physical therapy.
On cross-examination, Dr. Gordon testified that Smith did not present to him until approximately four months after the accident. He stated that, more than likely, had Smith sought treatment earlier, he would have obtained relief from his symptoms sooner. However, Dr. Gordon reiterated that it was more probable than not that the accident aggravated Smith’s preexisting back condition.
At the conclusion of the trial, the court awarded Smith $20,000 in general damages. The court also awarded special damages totaling $6,316.81 for medical bills and other out-of-pocket expenses, and litigation expenses in the amount of $694.25.[2] Additionally, the court awarded Mrs. |sSmith $1,000 for loss of consortium.
Defendants appeal.
*581 DISCUSSION

General Damages

Defendants contend the trial court erred in awarding plaintiff $20,000 in general damages. Defendants argue that plaintiff had a long history of back pain and other spinal issues related to his prior diagnosis of prostate cancer. Defendants also argue that plaintiff suffered only soft tissue injuries as a result of the accident and underwent only a few weeks of physical therapy; his symptoms had resolved within six months after the accident.
One injured through the fault of another is entitled to full indemnification for damages caused thereby. Wainwright v. Fontenot, 2000-0492 (La.10/17/00), 774 So.2d 70; Caskey v. Merrick Const. Co., Inc., 46,886 (La.App.2d Cir.3/14/12), 86 So.3d 186, writ denied, 2012-0847 (La.6/1/12), 90 So.3d 442. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or | (¡physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. Duncan v. Kansas City Southern Railway Co., 2000-0066 (La.10/30/00), 773 So.2d 670, cert. dism., 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001); Caskey, supra.
Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompany an injury. McGee v. A C & S, Inc., 2005-1036 (La.7/10/06), 933 So.2d 770; Caskey, supra. The elements of physical pain and suffering and associated mental anguish are conceptually related and, to a large extent, overlapping; therefore, they are difficult to precisely distinguish. Caskey, supra, citing Harris v. Delta Development Partnership, 2007-2418 (La.App. 1st Cir.8/21/08), 994 So.2d 69.
Also included in general damages can be an award for loss of enjoyment or quality of life. Miller v. Lammico, 2007-1352 (La.1/16/08), 973 So.2d 693; Caskey, supra. These damages refer to the detrimental alterations of a person’s ability to participate in the activities or pleasures of life that were formerly enjoyed. McGee, supra; Caskey, supra.
A defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Wainwright, supra; Caskey, supra. Although the victim’s damages may be greater because a prior condition was aggravated by the tort, the tortfeasor is, nevertheless, responsible for the consequences of his tort. Caskey, supra; Britt v. City of Shreveport, 45,513 (La.App.2d Cir.11/03/10), 55 So.3d 76. Nevertheless, before recovery can be granted for aggravation of a prejexisting7 condition, a causative link between the accident and the victim’s current status must also be established. Caskey, supra; Edwards v. LCR-M Corp., Inc., 41,125 (La.App.2d Cir.7/12/06), 936 So.2d 233.
The trial court has vast discretion in awarding general damages and its determination should rarely be disturbed. LSA-C.C. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993); Martin ex rel. Lee v. Walker, 47,483 (La.App.2d Cir.10/10/12), 107 So.3d 102. On appellate review, the initial inquiry is whether the trier of fact abused its vast discretion in assessing damages. If it is determined that the trial court abused its *582 discretion, then the appellate court may review prior awards to determine the highest or lowest point which is reasonably with in the trial court’s discretion. Martin, supra; Moody v. AIG Ins. Companies, 43,946 (La.App.2d Cir.1/14/09), 999 So.2d 1207. The appellate court should increase or reduce an award only when the award is beyond that which a reasonable trier of fact could assess for the particular injury, to the particular plaintiff, under the particular circumstances of the case. Youn, supra; Moody, supra.
In the instant case, Smith admitted that he had a history of prostate cancer. He also admitted that he had previously experienced some back problems attributable to the cancer. However, he testified that he had not experienced any back pain in the six months leading up to the accident. Smith also testified that as a result of the accident, he was unable to stand for long periods of time; he was unable to do yard work; he was unable to perform household chores; and he was unable to perform routine | ^maintenance on his vehicles. He stated that the pain decreased over time and he regained his ability to do some tasks. However, at the time of the trial, more than two years after the accident, Smith stated he continued to experience pain “at times” and was still unable to work in his yard or stand for long periods of time.
Dr. Gordon was the only physician who testified at trial (via deposition). He unequivocally testified that the accident aggravated Smith’s prior back condition. He also stated that there was no indication that Smith was exaggerating his symptoms. Dr. Gordon further testified that Smith’s pain decreased with physical therapy; however, he was still experiencing pain. According to Dr. Gordon, he offered additional treatment, including pain medication and medial branch nerve blocks of the lumbar and thoracic spine. However, Smith declined further treatment, stating that he had gone through so much with the cancer treatment, he did not desire any additional medical intervention at that time. Dr. Gordon further testified that he would have continued to treat Smith for his back pain had Smith not elected to discontinue treatment.
Additionally, Mrs. Smith testified that her husband was not experiencing any health problems in the months leading up to the accident. However, the pain from the accident prevented him from doing many of the activities he had done prior to the accident.
After reviewing this record, we are unable to say the trial court abused its vast discretion in awarding plaintiff $20,000 in general damages. Smith, who was 79 years old at the time of the accident, decided that he had[9endured enough. The fact that Smith elected to just “deal with” his pain does not minimize the fact that he continued to suffer from back pain as a result of the automobile accident.
The trial in this matter took place more than two years after the accident. By that time, Smith’s pain had improved, but had not resolved. Because of the accident, his injury continued to preclude him from performing basic tasks such as prolonged standing and yard work. His injury also continued to limit his ability to perform household chores. We find that the award of damages was supported by the record. Special Damages
Defendants further contend the trial court abused its discretion in awarding special damages. They argue that plaintiff introduced into evidence medical bills from Jackson Parish Hospital ($1,022.20), Louisiana Pain Care ($962.65), The Green Clinic ($1,772) and Jackson Parish Therapy Center ($2,219); however, *583 plaintiffs failed to prove that the bills reflected treatment provided to Smith as a result of the accident. According to defendants, the only medical treatment supported by the record was the treatment provided by Dr. Gordon. There is no basis in the record to support the awards for the bills from Jackson Parish Hospital, The Green Clinic or Jackson Parish Physical Therapy.
“Special damages” are those which must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty. Dotie v. Safeway Ins. Co. of La., 46,840 (La.App.2d Cir.3/14/12), 87 So.3d 942; Neloms v. Empire Fire & Marine Ins. Co., 37,786 (La.App.2d Cir.10/16/03), 859 So.2d 225; Moody v. Blanchard Place Apartments, 34,587 (La.App.2d Cir.6/20/01), 793 So.2d 281, writ denied, 2001-2582 (La.12/14/01), 804 So.2d 647. Some special damages, such as medical and related expenses, cost to repair or replace damaged property, loss of wages, etc., are easily measured. Id. A plaintiff is required to prove special damages by a preponderance of the evidence, and the district court’s findings in this respect are subject to a manifest error standard of review. Dotie, supra; Montgomery v. Kedgy, 44,601 (La.App.2d Cir.8/26/09), 21 So.3d 980, writ denied, 2009-2110 (La.11/25/09), 22 So.3d 167.
Here, we find that the trial court’s special damages award, which included Smith’s medical bills, is supported by the evidence. Dr. Gordon testified that he treated Smith at Louisiana Pain Care for the injuries Smith sustained in the automobile accident. Dr. Gordon also testified that he ordered an MRI, which was done at The Green Clinic; the report from the MRI was introduced into evidence. Dr. Gordon further testified that the MRI was interpreted by Dr. Weeks, a radiologist at The Green Clinic. Additionally, Smith, Mrs. Smith and Dr. Gordon all testified that Smith underwent several weeks of physical therapy. Smith stated he opted to go to physical therapy in Jackson Parish because it was closer to his home than the centers in Ruston and Monroe. Further, Smith and Dr. Gordon testified that Smith was seen at the emergency room at Jackson Parish Hospital on the day of the accident. The medical bill and itemized patient account detail from Jackson Parish Hospital were introduced into evidence. Those | t , documents showed Smith was treated at the emergency room at Jackson Parish Hospital on November 30, 2009 (the date of the accident). Smith’s primary diagnosis was listed as “backache;” his secondary diagnosis was “traffic accfident].” The “account detail and charge summary” show that Smith was seen by an emergency room doctor, had various x-rays and was given three different medications on the day of the accident. Therefore, we find that the record supports the trial court’s conclusion that the medical bills introduced into evidence were for medical treatment rendered to Smith as a result of the automobile accident. Accordingly, the trial court was not manifestly erroneous in awarding special damages to plaintiff for all medical bills introduced into evidence.
Defendants also contend the trial court erred in awarding Smith $241 for reimbursement for the fees he incurred to rent a vehicle while his car was being repaired. Defendants do not specifically dispute the fact that Smith rented a vehicle while his car was being repaired. They argue that Smith did not introduce any bills or invoices into evidence to prove the amount he “actually paid” for the rental car.
Smith testified that because his car was damaged in the accident, he rented a vehicle for “three or four days” while his car *584 was being repaired. With regard to the amount he paid for the rental, the colloquy was as follows:
Q: What did you pay to rent the vehicle?
A: I don’t remember the exact figure[;] it was over $200.00, about $241.00 rings a bell. I’m not just really sure[,] but I think that’s what it was.
|]2On cross-examination, Smith admitted that he did not have any receipts for his car rental expenses and that he was unable to recall the exact amount he paid. However, Smith reiterated that the amount was “somewhere around $241.00.” Thus, we find that the trial court’s award of $241 for rental car expenses is supported by the record, and, therefore, was not manifestly erroneous or clearly wrong. This assignment lacks merit.

Loss of Consortium

Defendants also contend the trial court erred in awarding damages to Mrs. Smith for loss of consortium. Defendants argue that plaintiffs did not introduce any evidence to prove that the accident affected them marriage or that they experienced a loss of love and affection.
LSA-C.C. art. 2315(B) authorizes the recovery of monetary damages for loss of consortium, service, and society by the spouse and children of an injured person. In general, a claim for loss of consortium has seven elements: (1) loss of love and affection, (2) loss of society and companionship, (3) impairment of sexual relations, (4) loss of performance of material services, (5) loss of financial support, (6) loss of aid and assistance, and (7) loss of fidelity. To be compensable, it is not necessary for a claim for loss of consortium to include damages from each type of loss. Caskey, supra; Britt, supra. Proof of any one of these elements is sufficient to support a damage award of loss of consortium. Caskey, supra; McNeill v. Landstar Ranger, Inc., 43,362 (La.App.2d Cir.6/11/08), 986 So.2d 905, writ denied, 2008-1558 (La.10/10/08), 993 So.2d 1287.
The record shows that, at the time of trial, Troy and Carla Smith had 113been married for over 30 years. Both testified Mr. Smith was quite active prior to the accident, and that since the incident, his activities became limited due to his pain. Although Mrs. Smith testified that she and her husband did not experience any loss of love and affection as a result of the accident, she clearly testified that the injuries her husband received in the accident had caused a significant change in their lifestyle. Specifically, she stated that since the accident, her husband is no longer able to maintain the yard; therefore, she has to do the majority of the yard work. She also testified that she had to do most of the household chores because Mr. Smith is not able to do very much due to his back pain. Therefore, we find that Mrs. Smith’s testimony was sufficient to show that she experienced the loss of society and companionship, performance of material services and aid and assistance as a result of this accident. Accordingly, we find that the trial court’s award of $1,000 is supported by the evidence of record and is not an abuse of discretion. This assignment lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court’s damage awards in all aspects. Costs of the appeal are assessed to defendants, Mark S. Escalón, ARI Fleet LT and Discover Property and Casualty.
AFFIRMED.

. Vertebroplasty is a spinal procedure in which bone cement is injected into a fractured vertebrae to relieve back pain caused by compression fractures.

. The trial court itemized the special damages as follows:
I. OUT OF POCKET EXPENSES:
A. Rental of replacement vehicle while Plaintiffs' vehicle was being repaired at the expense of the Defendants $ 241.00
B. Paid to obtain copies of medical records in order to prove treatment undergone at trial $ 24.00
C. Due Dr. Gordon for Purposes for trial deposition $ 900.00
D. Paid court reporter (Duke Copeland Reporters LLC) for trial deposition $ 245.25
E. Court Costs advanced by Plaintiffs $ 425.00
F. 4 Trips to Ruston to see Dr. Gordon (24.5x2x4x$0.51) $ 99.96
II. MEDICAL EXPENSES
A. Louisiana Pain Care Center $ 962.65
B. Jackson Parish Hospital $1,022.20
C. Jackson Parish Therapy Center $2,219.00
*581 D. Dr. Weeks $1,698.00
E. Green Clinic $ 574.00