Judgment rendered November 18, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,644-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KAYLONNA DOTSON                               Plaintiff-Appellant

versus

DARREN BALSAMO AND                            Defendant-Appellee
STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2018CV03778

Honorable Aisha S. Clark, Judge

* * * * *

DWAYNE BURRELL                                Counsel for Appellant


LAW OFFICE OF K. DOUGLAS WHEELER              Counsel for Appellee
By:  K. Douglas Wheeler


* * * * *

Before STONE, STEPHENS and BLEICH (*Pro Tempore*), JJ.

**STONE, J.**

## FACTS AND PROCEDURAL HISTORY

This litigation arises from an admittedly minor rear-end collision in the drive-through lane at a Popeye's Fried Chicken restaurant on the evening of April 9, 2018. Kaylonna Dotson (the "plaintiff") was stopped in line when Darren Balsamo (the "defendant") allowed his vehicle to roll into her vehicle at idle speed.

The parties exited their vehicles and began discussing the matter in the Popeye's parking lot. The plaintiff accused the defendant of damaging (scratching) her car, and the defendant pointed out that, based on the location of the impact, he could not have caused the damage to which the plaintiff referred. The parties summoned the police and made a police report. The front of the defendant's vehicle and the rear of the plaintiff's vehicle were photographed extensively. These photographs were introduced in evidence at trial, and show that there was no evidence of the impact on the parties' respective vehicles, *i.e.,* no scratches, scuffs, or dents. Mr. Balsamo testified that the impact did not even remove the road dust from the part of his vehicle which contacted the plaintiff's vehicle. Approximately an hour elapsed between the time of the collision and when the parties finally left the Popeye's. During this time, the plaintiff made no mention of any type of physical pain.

Nonetheless, the plaintiff reported to the emergency room ("ER") within an hour of leaving the Popeye's and was examined for injuries. The medical records indicate that she had no "back pain" and no "cervical spine tenderness" (neck pain) and full range of motion when examined in the ER. At trial, the plaintiff initially conceded that she was not experiencing any

pain throughout the time between the collision and the conclusion of her ER visit; she claimed that her pain did not begin until after she left the ER. However, the plaintiff later changed her testimony, claiming that her neck started hurting immediately upon the collision, but her back did not start hurting until after she left the ER. Also, the plaintiff initially testified that it was her own idea to go to the emergency room, but on cross examination she admitted that her father had advised her to go to the emergency room.

Within a week of the accident, the plaintiff had consulted with her attorney in this matter, who gave her a referral to Mayfield West Chiropractic ("MCW"). Her first visit to MCW was on April 16, 2018. The plaintiff's initial treatment plan spanned one month, *i.e.*, it was set to end on May 16, 2018. However, the plaintiff continued her treatment until July 27, 2018. On all but one of her 28 (treatment) visits to the chiropractor, she reported her pain level on a scale of 1 to 10 when reporting for treatment. She reported whether/to what degree she had pain as follows:

1. April 18 (1 of 10)
2. April 20 (2 of 10)
3. April 23 (zero pain)
4. April 25 (3 of 10)
5. April 27 (no statement regarding subjective pain),
6. April 30 (zero pain)
7. May 2 (zero pain)
8. May 4 (zero pain)
9. May 7 (1 of 10)
10. May 9 (zero pain)
11. May 11 (zero pain)
12. May 16 (zero pain)
13. May 18 (4 of 10, but only 25% to 50% of the time)
14. May 21 (1 of 10, but only 1% to 25% of the time)
15. May 22 (2 of 10, but only 25 to 50% of the time)
16. May 23 (zero pain)
17. May 29 (1 of 10, but only 25% to 50% of the time)
18. May 30 (zero pain)
19. June 1 (zero pain)
20. June 5 (zero pain)
21. June 6 (zero pain)

22. June 13 (zero pain)
23. June 18 (zero pain)
24. June 19 (zero pain)
25. June 26 (zero pain)
26. July 9 (zero pain)
27. July 17 (zero pain)
28. July 27 (zero pain)

The plaintiff claimed that she continued these treatments despite her lack of pain because the chiropractor advised her to do so.

The trial court awarded the plaintiff recovery of her bills for the ER visit and the first five chiropractic appointments. The trial court denied all further recovery of medical expenses, and denied general damages. The plaintiff appeals, claiming the trial court erred: (1) in not awarding all of the medical expenses, even if they were incurred unnecessarily; (2) in not awarding general damages despite having awarded medical expenses; and (3) in not awarding judicial interest.

**DISCUSSION**

**Damages; standard of review**

The fountainhead of Louisiana tort liability is La. C.C. art. 2315, which provides that "every act of man that causes damage to another obliges him by whose fault it happened to repair it." The "repair" referenced in article 2315 is often made in the form of payment of "damages." "The term 'damages' refers to 'pecuniary compensation, recompense, or satisfaction for an injury sustained.'" *McGee v. A C And S, Inc.*, 05-1036 (La. 7/10/06), 933 So. 2d 770, 773, *citing Fogle v. Feazel,* 10 So. 2d 695, 698 (1942). In the tort context, La. C.C. art. 2315 authorizes compensatory damages, which are designed to restore the plaintiff to the state he would have been in but for the tort. *McGee* at 774, *citing* Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW §7-1 (Michie 1996).

Compensatory damages are classified as either "special" or "general." *McGee* at 774. On appeal, the standard of review applicable depends on the classification of the particular item of damages at issue. "Special damages" are those which have a ready market value, *i.e.*, their value can be determined with relative certainty. *Smith v. Escalon,* 48,129 (La. App. 2 Cir. 6/26/13), 117 So. 3d 576, 583. Past medical expenses are an item of special damages. *Tamayo v. American National Gen. Ins. Co.,* 14-130 (La. App. 5 Cir. 9/24/14), 150 So. 3d 459. A fact-finder's decision regarding special damages is subject to manifest error review. This standard only allows an appellate court to adjust a damages award where: (1) there is no reasonable factual basis for the fact-finder's decision; and (2) the decision is clearly wrong. *Guillory v. Insurance Company of North America,* 96-1084 (La. 4/8/97) 692 So. 2d 1029, 1031-2. [1]

"General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms." *Smith, supra,* at 581 *citing Duncan v. Kansas City Southern Railway Company*, 00-0066, p. 13 (La. 10/30/00), 773 So. 2d 670, 682.

The fact-finder's decision regarding the amount of general damages, if any, awarded to a personal injury plaintiff is subject to abuse of discretion review. *Bouquet v. Wal-Mart Stores, Inc.*, 08-0309 (La. 4/4/08), 979 So.2d

---

[1]Appellate courts review judgments, not reasons for judgment. *Wooley v. Lucksinger*, 2009-0571 (La. 4/1/11), 61 So. 3d 507. Manifest error review is conducted within this parameter.

456, 458-9. The fact-finder is granted "vast discretion" in fixing general damage awards. *Duncan* at 682. In determining whether an award is abusively low, "the evidence must be viewed in the light most favorable to the defendant." *Evans v. Kilbert,* 27,101 (La. App. 2 Cir. 8/23/95) 660 So. 2d 167, 168, *citing Higginbotham v. Ouchita Parish Police Jury,* 513 So. 2d 537 (La. App. 2 Cir. (1987). An appellate court may disturb a general damages award only after an articulated analysis of the facts reveals an abuse of discretion. *Bouquet* at 459. A reviewing court's role is to examine the facts and circumstances of the case to determine whether the fact finder has abused its discretion. *Id.*

**Liability for unnecessary medical treatment**

A tortfeasor "is required to pay the victim for the cost of unneeded medical treatment [for the injury caused by the tort], including chiropractic care," unless the victim incurred these expenses in "bad faith." *Starnes v. Caddo Parish School Board,* 598 So. 2d 472, 479 (La. App. 2 Cir. 1992).

In *Bass v. Allstate Ins. Co.,* 32,652 (La. App. 2 Cir. 1/26/00), 750 So.2d 460, we affirmed a trial court judgment denying the plaintiffs recovery for all but the first week of chiropractic treatment following a vehicle or accident. The trial court found that the plaintiffs "grossly and deliberately exaggerated…the extent of any irritations for injuries in an overt attempt to increase potential recovery." We held that the plaintiffs, in continuing treatment despite having already been healed, for the sole purpose of increasing their damages, constituted incurring overtreatment in "bad faith."

In *Hamilton v. Wild,* 40,410 (La. App. 2 Cir. 12/14/05), 917 So. 2d 695, the trial court denied the plaintiff recovery for past medical expenses except for those incurred during the initial phase after the accident. The trial

court found that the plaintiff "grossly and deliberately exaggerated the impact experienced in the accident and the extent of her alleged injuries." We affirmed the judgment. The record was sufficient to support the trial court's finding that the plaintiff was in bad faith in incurring the medical expenses, based on the plaintiff's gross and deliberate exaggeration of the impact of the vehicle collision and the extent of her alleged injuries.

In *Ellis v. Brown*, 50,690 (La. App. 2 Cir. 5/18/16), 196 So. 3d 665, we emphasized that *Starnes*, *supra*, must be applied within the general framework of tort law and appellate review:

> This court has often stated that the defendant is required to pay the cost of …unnecessary medical treatment unless it was incurred by the victim in bad faith…Nonetheless, the supreme court has held that the defendant is liable only for those expenses that are related to the defendant's conduct, *Wainwright v. Fontenot, supra,* and that the trier of fact may disallow medical expenses that it reasonably finds unrelated to the accident, *Guillory v. Lee, supra.* Further, in order to reverse or amend a trial court's award of special damages, the appellate court must find no reasonable basis for the trial court's factual conclusions, and that the award is clearly wrong. *Guillory v. Lee, supra.*

*Ellis* at 671.

**Award of special medical damages, but no award of general damages**

The plaintiff cites *Chambers v. Graybriel,* 25,840 (La. App. 2 Cir. 6/22/94), 639 So. 2d 361, as supporting her position that it is an error of law for a court to award special medical damages without also awarding general damages. In her brief, the plaintiff also accuses the trial court of putting words in her mouth:

> Kaylonna Dotson never said "I didn't have any pain. I said what I felt and that was that." It was just never uttered out of her mouth, so the fact that the Trial Court believed those words, which simply were never stated is clearly erroneous.

7

In rebuttal, the defense cites *Wainwright, supra*, which holds that whether awarding past medical expenses but not general damages is error depends on the facts of the case; it is not a per se rule. *Wainwright, supra,* states that the main question is whether the plaintiff's alleged injury presents objective symptoms. If there are no objective symptoms, it is not necessarily error to deny general damages yet award past medical expenses.

The defense also cites *Coleman v. U.S. Fire Ins. Co.,* 571 So. 2d 213 (La. App. 3 Cir. 1990), wherein the Third Circuit upheld a judgment which denied general damages but awarded medical expenses for the plaintiff-motorist's emergency room visit. The Third Circuit reasoned that the evidence furnished a reasonable basis for finding that the plaintiff motorist did not sustain injuries as a result of the accident but was justified in getting a medical check-up after it. *Wainwright, supra,* cited *Coleman, supra,* with approval.

**Judicial interest**

In *Smith v. Quarles Drilling Co.*, 04-0179 (La. 10/29/04), 885 So. 2d 562, 566, the Louisiana Supreme Court set forth the general rule regarding judicial interest in tort cases, as follows:

> Louisiana Code of Civil Procedure article 1921 provides: "Interest in the judgment shall be awarded as prayed for or as allowed by law."[5] The "as allowed by law" language has been frequently interpreted to refer to judicial interest in tort cases. *See* LSA–R.S. 13:4203.
> …
>
> LSA–R.S. 13:4203 provides as follows:
> Legal interest shall attach from date of judicial demand, on all judgments, sounding in damages, "ex delicto", which may be rendered by any of the courts.
>
> It is well settled that interest provided by LSA–R.S. 13:4203 is due whether prayed for or provided in the judgment. *Caldwell v. City of Shreveport*, 150 La. 465, 90

So. 763 (1922); *see also LeBlanc v. New Amsterdam Casualty Company,* 202 La. 857, 13 So. 2d 245 (1943), *citing Layne v. Louisiana Power & Light Co.*, 164 So. 672 (La. App. 2 Cir.1935).

**Analysis**

Based on her oral reasons for judgment, and the judgment itself, the trial court apparently concluded that Ms. Dotson did not suffer any actual injury. At any rate, the evidence supports the judgment. *Wooley, supra.* The ER records indicate that, at the time of her ER visit, Ms. Dotson was experiencing no back pain or cervical tenderness, and that she had a full range of motion. In her testimony, Ms. Dotson initially admitted that these statements in the ER records are correct; however, later in her testimony, she changed her story, claiming that her neck pain began immediately when Mr. Balsamo's vehicle idled into her vehicle in the Popeye's drive-through lane, but her back pain did not begin until after the ER visit. Ms. Dotson also changed her story on the witness stand regarding whether it was her own idea to go to the ER. She initially claimed that it was her own idea, but later admitted that her father had advised her to go. Finally, the trial court insinuated that, in light of the photographs of the rear end of Ms. Dotson's vehicle, her testimony that Mr. Balsamo's his vehicle had damaged her car was incredible. After reviewing the photographs in evidence, we agree. Finally, Ms. Dotson reported having zero pain at 19 of her 28 chiropractic visits following the vehicular contact in the Popeye's drive-through lane.

The evidence in the record more than adequately supports the conclusion that Ms. Dotson suffered no injury whatsoever, was untruthful in that regard, and was malingering in the hope of obtaining money. On that basis, the record supports the conclusion that she incurred expenses for her

9

last 23 chiropractic visits in "bad faith" under *Starnes, supra.* This forecloses Ms. Dotson's entitlement to any further recovery of her chiropractic expenses.[2]

Furthermore, Ms. Dotson's evidence of her alleged injury consists entirely of her own testimony and her chiropractic records. Her chiropractic records necessarily are based on what she told the chiropractor; they do not provide objective proof of injuries (*e.g.,* an x-ray depicting a broken bone). Given Ms. Dotson's lack of credibility, and the lack of evidence independent of Ms. Dotson's allegations, the trial court was within its vast discretion in denying Ms. Dotson an award for general damages. *Wainwright, supra.*

Finally, we note that the trial court did not err in not explicitly providing for judicial interest in the judgment. The judgment entitles the plaintiff to interest regardless. *Smith, supra.*

### CONCLUSION

The judgment of the trial court is AFFIRMED. All costs of this appeal are taxed to the plaintiff, Kaylonna Dotson.

---

[2]Trial courts have the authority to award medical expenses as an item of special damages to a plaintiff who is not physically injured to the extent the expenses are incurred for precautionary medical examination, *i.e.,* to ascertain whether or not a plaintiff has been injured. *Coleman, supra.* To that end, the trial court very generously awarded the plaintiff damages for not only her ER expenses, but also her first five chiropractic visits.