PITMAN, J.
| defendants Deborah A. Davidson, Tyler Transportation and Transguard Insurance Company of America appeal a judgment awarding Plaintiff James L. Tabb general damages of $17,500. For the following reasons, we affirm the judgment of the trial court.

FACTS

On April 26, 2007, a school bus carrying members of the Rayville High School track team was traveling on Highway 425 in Rayville, Louisiana when it was struck by a tractor-trailer driven by Defendant Deborah Davidson. The injured passengers filed suit against Ms. Davidson; the owner of the trucking company, Tyler Transportation; and their insurer, Trans-guard Insurance Company of America. All plaintiffs’ claims were settled and resolved prior to trial with the exception of Plaintiff James L. Tabb’s claim that the accident caused his injury or aggravated a pre-existing injury.
A bench trial was held on December 6, 2012. Plaintiff and his mother, Traci Tabb,[1] testified. Defendants submitted the police accident report, medical records from Richardson Medical Center, medical records from Dr. David M. Trettin and the deposition of Dr. Trettin for the trial court’s review. The parties stipulated that Defendants were at fault; therefore, the only issue at trial was whether Plaintiff *1238 was entitled to damages as a result of the April 26, 2007 accident.
Plaintiff testified that, during the fall of 2006, he dislocated his left shoulder twice in one day during a high school football practice. His coach [ 2took him to Dr. Tret-tin’s office for a medical evaluation, where Plaintiff was given a shoulder harness and advised that he might need surgery in the future. Plaintiff wore the shoulder harness while playing football and testified that his shoulder did not dislocate again during the fall 2006 football season.
Plaintiff further testified that, on April 26, 2007, he was a passenger on a school bus after a high school track meet. At 1:00 a.m., Plaintiff was partially asleep, lying down on the last row of seats on the school bus when an accident occurred. Plaintiff stated: “My body went forward and slammed to the floor and dislocated my shoulder.” Plaintiff testified that he popped his shoulder back into place. Plaintiff and the other passengers on the bus were taken to Richardson Medical Center in Rayville for observation. Plaintiff was placed in a shoulder sling.[2]
Plaintiff also testified that he was involved in another automobile accident on May 4, 2007 — eight days after the school bus accident. Plaintiff was a passenger in a car that was hit from behind while at Sonic Drive-In. Plaintiff stated that he was wearing his seatbelt at the time so his body never left the seat, and his shoulder did not dislocate as a result of the accident at Sonic. Plaintiff further stated that there was “no comparison” between that accident and the school bus accident because the school bus accident was “a lot of sacrifice on my body because of what the impact caused me to do as far as fly forward and hit the seat in front of me and hit the floor.”
| sIn addition, Plaintiff testified that, following the school bus accident, his shoulder began to dislocate at night when he would lie down to sleep, which had not occurred prior to the bus accident. He began sleeping upright in a recliner to prevent his shoulder from dislocating. Plaintiff also stated that, prior to the school bus accident, his arm rolled forward when it dislocated; but, after the accident, his arm rolled backward when it dislocated.
Plaintiff testified he returned to Dr. Trettin’s office in May 2007 for a follow-up examination of his shoulder. Dr. Trettin performed some exercises on his shoulder, took x-rays and advised Plaintiff he would need surgery “immediately.” Plaintiff underwent shoulder surgery on June 19, 2007, after which he experienced pain and numbness. He testified that his shoulder dislocated at least ten times post surgery. Plaintiff also testified that, although he received two athletic scholarships, he was unable to play football in college because of his shoulder injury.
Plaintiffs mother, Traci Tabb, testified that her son’s shoulder “wasn’t as painful” before the school bus accident, but the pain became “so severe” after the school bus accident that his shoulder would dislocate on a “regular basis.” She stated that, after his shoulder surgery, Plaintiff was in so much pain that “he had the pain pump on him and he could squeeze it ever so often but it still didn’t help with the pain and he would just be there crying at times, you know, saying that — how painful it was.” Mrs. Tabb also testified that Dr. Trettin informed her that the problems with her son’s [4shoulder were caused by an injury during football practice and by a *1239 genetic condition that caused him to have loose ligaments.
In his deposition, Dr. Trettin testified that he first treated Plaintiff for his shoulder injury after the injury at football practice in October 2006 and then again following the school bus and Sonic accidents in May 2007. When examining Plaintiff on October 12, 2006, Dr. Trettin noted that Plaintiff injured his shoulder playing football and that his shoulder had dislocated “at least three or four and maybe five or six times” since the initial injury.. Dr. Tret-tin further noted that Plaintiff had “signs of instability” in his left shoulder and “ ‘[mjoderate signs of ligamentous laxity.’ That means he’s a little bit loose-jointed, basically.” Dr. Trettin had Plaintiff fitted with a shoulder harness so that he could continue to play football and stated that Plaintiff might need surgery at the end of the year.
Dr. Trettin further testified that he again examined Plaintiff on May 23, 2007, as a follow-up visit on the instability in his left shoulder. Dr. Trettin noted that Plaintiffs shoulder now slips out at night, which means “it’s become more loose” and determined that Plaintiff would need immediate shoulder surgery. On June 19, 2007, Dr. Trettin operated on Plaintiffs shoulder.
Dr. Trettin also testified that the instability in Plaintiffs left shoulder was caused by the football injury, but that the school bus accident more probably than not aggravated the pre-existing injury to Plaintiffs shoulder. Dr. Trettin stated:
Definitely his instability is worse.... For me it’s difficult to assess what has caused it to become worse, if it would have | r,been a natural progression or if the accident — which apparently it did cause his shoulder to come out of place, made it worse. It surely didn’t help it. The shoulder was already popping out before then.
The trial court found that the school bus accident' on April 26, 2007, aggravated Plaintiffs pre-existing left shoulder injury and fixed general damages in the amount of $17,500. Defendants appeal the judgment of the trial court.

DISCUSSION

Aggravation of Pre-existing Injury

In their first assignment of error, Defendants argue that the trial court erred in finding that the school bus accident on April 26, 2007, aggravated Plaintiffs preexisting shoulder injury, contending that Plaintiff did not meet his burden of proof in that regard. ■ Defendants further argue that the medical testimony of Dr. Trettin demonstrates that Plaintiffs shoulder injury was the same, before and after the school bus accident.
Plaintiff argues that evidence of an aggravation of his shoulder injury was presented at trial. He states that Dr. Trettin testified that the school bus injury “definitely didn’t help his shoulder” and that the school bus accident more probably than not aggravated his pre-existing injury. Plaintiff also argues that his own trial testimony and the testimony of his mother demonstrate an aggravation of the injury to his shoulder.
A court of appeal may not set aside a trial court’s finding of fact “in the absence of ‘manifest error’ or unless it is ‘clearly wrong ” or “has no reasonable factual basis.” Rosell v. ESCO, 549 So.2d 840 (La.1989); Perniciaro v. Brinch, 384 So.2d 392 (La.1980). When seeking damages in |fia personal injury action, the plaintiff has the burden of proving a causal relationship between the accident and any alleged injuries by a preponderance of the evidence. Lewis v. Wallace, 47,885 (La.App.2d Cir.2/27/13), 110 So.3d 1228. The plaintiff satisfies the burden by proving through *1240 medical and lay testimony that it was more probable than not that the accident caused the injury. Id.
In a well-reasoned opinion, the trial court stated:
After hearing the testimony and reviewing the medical records and deposition, this Court is of the belief that the evidence did not prove that the April 26, 2007 accident caused the surgery to take place. It appeared that Mr. Tabb’s shoulder surgery was going to take place, even if the accident had not occurred. Mr. Tabb had continued to wear the harness and the shoulder was still popping out on occasion, which shows Mr. Tabb was still having trouble with his shoulder before the accident.
However, this Court is of the belief that the April 26, 2007 accident aggravated Mr. Tabb’s condition. Although Mr. Tabb was wearing his shoulder brace before the April 26, 2007 accident, the shoulder was only popping out on occasion, and was not popping out at night. After the 4/26/07 accident, Mr. Tabb suffered additional injuries which made Mr. Tabb’s condition worse. He did injure his left shoulder in the April 26, 2007 accident and his condition immediately became worse. The shoulder began popping out at night and Mr. Tabb had to sleep in a recliner. Additionally, the shoulder was popping out in both the front and back and was popping out each night, which it had not done before the accident.
In this Court’s opinion, the 4/26/07 accident aggravated Mr. Tabb’s left shoulder condition to such extent that he had to have surgery sooner after this accident and due to the worsened condition, the surgery was more extensive and recovery more extensive.
This court does not find that the trial court was manifestly erroneous when finding that the school bus accident on April 26, 2007, aggravated Plaintiffs preexisting shoulder injury. Plaintiff testified that the condition of his shoulder worsened after the school bus accident in that it began 17popping out of socket at night and that his arm began rolling backward when it dislocated, neither of which had occurred prior to the school bus accident. Mrs. Tabb also testified that the condition of her son’s shoulder worsened following the school bus accident in that his pain was more severe and his shoulder dislocated more regularly. Dr. Trettin’s testimony also noted the changes in the condition of Plaintiffs shoulder before and after the school bus accident. Dr. Trettin testified that the original instability in Plaintiffs left shoulder was caused by the football injury, but that the school bus accident more probably than not aggravated his pre-existing shoulder injury. The trial court’s finding of fact that the school bus accident aggravated Plaintiffs pre-existing shoulder injury is not clearly wrong or manifestly erroneous. Therefore, we find that this assignment of error lacks merit.

Excessive Damages

In their second assignment of error, Defendants argue that the trial court’s award of $17,500 in general damages and $478 in medical expenses is excessive. Defendants contend that, in the comparable eases of Fox v. Layton, 42,491 (La.App.2d Cir.10/17/07), 968 So.2d 302, and Kaffenberger v. Jones, 34,449 (La.App.2d Cir.2/28/01), 781 So.2d 692, the trial courts awarded $10,000 and $6,500, respectively, in general damages. Defendants argue that, in comparison to Fox and Kajfenber-ger, the $17,500 awarded to Plaintiff in the current case is excessive.
Plaintiff argues that the award of $17,500 in general damages is not excessive. Plaintiff suggests that the cases of Inzinna v. Walcott, 02-0582 (La.App.1st *1241 Cir.11/21/03), 868 So.2d 721; Robling v. Allstate Ins. Co., 97-0582 (La.App.1st Cir.4/8/98), 711 So.2d 780; and Caldwell v. Smith, 25,956 (La.App.2d Cir.8/17/94), 641 So.2d 1011, are more factually similar to Plaintiffs case, and the appellate courts affirmed the awards of general damages of $25,794, $35,000 and $35,000, respectively, in these cases.
A court of appeal cannot disturb a trial court’s award of damages unless the record “clearly reveal[s] that the trier of fact abused his discretion in making his award.” Perniciaro v. Brinch, supra.
[T]he role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Each case is different, and the adequacy or inadequacy of the award should be determined by the facts or circumstances particular to the case under consideration.
Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993).
 It is well settled that a defendant takes his victim as he finds him and is responsible for all the natural and probable consequences of his tortious conduct. Pemiciaro v. Brinch, supra. In eases where the defendant’s negligent actions aggravate the plaintiffs pre-existing injury, the defendant must compensate the plaintiff for the full extent of this aggravation. Id. at 396.
In the present case, the trial court awarded $17,500 in general damages for the aggravation of Plaintiffs pre-existing shoulder injury. In the portion of the trial court’s opinion quoted, supra, the trial court found that the school bus accident did not cause Plaintiff to need shoulder surgery, but that the accident aggravated his pre-existing shoulder injury. The trial | ;)COurt further found that the aggravation of the pre-existing injury required Plaintiff to “have surgery sooner ... and due to the worsened condition, the surgery was more extensive and recovery more extensive.” The trial court reasoned that “Mr. Tabb had more pain both before and after the surgery due to the aggravated condition” and awarded general damages “for the extent of aggravation of the pre-existing injury.”
The trial court awarded $428 in medical expenses. It explained that “[t]he surgical expenses, Dr. Trettin’s expenses, and the physical therapy would have been incurred even had the accident not occurred,” but the visit to the Richardson Medical Center, the radiology report and the May 23, 2007 appointment with Dr. Trettin were “directly related to the 4/26/07 accident.” The trial court found that Plaintiff was not entitled to recover medical expenses for those costs that would have been incurred had the school bus accident not occurred. The trial court limited Plaintiffs recovery of medical expenses to those directly related to the school bus accident.
We find that the trial court was not manifestly erroneous in awarding Plaintiff $17,500 in general damages for the aggravation of his shoulder injury. The trial court differentiated between the consequences of the original injury and those of the aggravation of the pre-existing injury and limited Plaintiffs recovery of general damages and medical expenses to those caused by the aggravation of the pre-exist-ing shoulder injury. Therefore, we find that this assignment of error lacks merit.
| ^CONCLUSION
For the foregoing reasons, the judgment of the trial court in favor of Plaintiff James L. Tabb, and against Defendants Deborah A. Davidson, Tyler Transportation and Transguard Insurance Company of America, finding that the school bus accident aggravated Plaintiffs pre-existing injury *1242 and awarding him general damages of $17,500 and medical expenses in the amount of $428 is affirmed. Costs of appeal are assessed to Defendants, Deborah A. Davidson, Tyler Transportation and Transguard Insurance Company of America.
AFFIRMED.

. Mrs. Tabb’s first name is spelled two different ways in the record — "Traci” and "Tracy.”

. Plaintiffs medical records from Richardson Medical Center Emergency Department dated April 26, 2007, state: "Bus wreck. Threw shoulder out, partly. Still sore. Has had previous dislocation. Is to be operated on end of track season."