(75 South. 661)

No. 21050.

FRANKLIN v. W. K. HENDERSON IRON WORKS & SUPPLY CO.

(Jan. 15, 1917. On Rehearing, June 11, 1917.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⊂⟂265(2) — ACTION FOR INJURY—NEGLIGENCE—PROOF.

Plaintiff, suing for damages for the loss of two toes sustained in the operation of a freight elevator in a machine shop, is bound to prove affirmatively that such loss was the direct result of some fault on the part of the defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 878, 895, 896.]

2. MASTER AND SERVANT ⊂⟂265(5)—ACCIDENT —PRESUMPTION.

The mere fact of an accident does not carry with it the presumption of negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 881, 898, 955.]

3. MASTER AND SERVANT ⊂⟂265(8)—ACCIDENT —CIRCUMSTANCES.

The facts and circumstances connected with the accident must be shown, so as to enable the court to trace the definite causes.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 879, 897.]

4. MASTER AND SERVANT ⊂⟂276(1)—ACTION FOR INJURY—EVIDENCE—DISMISSAL.

Where the plaintiff in his testimony gave no reasonable or probable account of how the accident happened, and finally admitted that he knew nothing about it, except that he was pretty badly hurt, and evidence was adduced by the defendant tending to show that the plaintiff was injured through his own fault, the judgment below will be reversed, and the suit dismissed.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950, 954.]

Monroe, C. J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; John R. Land, Judge.

Suit by Henry Franklin against the W. K. Henderson Iron Works & Supply Company. Judgment for plaintiff, and defendant appeals. Reversed, and suit dismissed.

J. S. Atkinson, of Shreveport, for appellant. G. H. Holder, of Shreveport, for appellee.

LAND, J. Plaintiff sued the defendant for $5,052 damages for the loss of his big toe and the one next to it, sustained while the plaintiff was operating one of the defendant's freight elevators.

The petition alleged that the plaintiff had made several successful trips on the elevator, "when rolling his wheelbarrow of iron onto the elevator, and pulling on the rope as he did before, the elevator flew up suddenly from some unexplainable cause, and his hand was caught between the knob on said rope and an iron bar; that when he jerked

his hand out the elevator suddenly dropped from some unexplainable cause, catching his right foot between the edge of the car and the broken edge of the concrete floor; that his foot was badly mashed, necessitating the amputation of two toes, the big toe and the one next to it."

The petition alleged that the defendant was negligent in not instructing the plaintiff how to operate said elevator, and in not warning him as to any danger to him in the operation of said elevator.

The petition further alleged that said elevator was old, out of date, defective, and unsafe, and that the defendant knew or should have known of its defective condition.

The petition further alleged that the defendant knew nothing about elevators or machinery, had spent nearly all his life on a farm, and as house boy, and could neither read nor write.

Defendant filed a plea of estoppel, and an exception of no cause of action, which were heard and overruled.

Defendant then answered specially, denying all the allegations of negligence set forth in the petition, and averred that the plaintiff well understood how to operate the elevator, which was very simple and easy to operate.

The answer denied that the accident happened in the manner alleged in the petition; admitting, however, that plaintiff's right foot was caught, but denying that it was caught by reason of any sudden dropping of the elevator.

The answer contained the usual pleas of contributory negligence and assumption of risks.

The case was tried, and, for reasons assigned in the elaborate opinion of the judge a quo, judgment was rendered in favor of the plaintiff for $2,302, with interest and costs.

The defendant has appealed.

We think that defendant's exception of no cause of action was properly overruled.

If, as alleged, plaintiff, a common laborer, who knew nothing about elevators or machinery, was called upon by his employer to run a freight elevator, without previous instructions as to proper mode of operating the machine, and without warnings as to the dangers incident to his employment, and plaintiff, while endeavoring to operate the elevator to the best of his ability, was injured as alleged in his petition, we are of opinion that a cause of action is disclosed.

In such a case the master is negligent in not properly instructing and warning his ignorant servant, and if the latter be injured while endeavoring to perform the work assigned to him, the prima facie presumption is that the injury was occasioned by the negligence of the master.

There is a great deal of conflicting evidence in the case.

On the question of instructions and warnings, plaintiff's denial is overcome by the testimony of John Williams, Jake Williams, and A. Brown, the latter one of the plaintiff's witnesses.

Williams made several trips with plaintiff on the elevator, instructing him how to operate the same.

After the plaintiff took sole charge, the petition alleges that "he made several successful trips" before the accident happened, and on his last trip was "pulling on the rope as he had done before," when "the elevator flew up suddenly from some unexplainable cause," and a few moments later "suddenly dropped from some unexplainable cause."

The petition alleges that, when the elevator "flew up," plaintiff's "hand was caught between the knob on said rope and the iron bar," and that the elevator "suddenly dropped, * * * mashing his right foot between the edge of the car and broken edge of the concrete floor."

The hydraulic elevator in question was operated by two simple movements. By pulling down the lower knob, the water power was applied, and the platform ascended until the crossbar reached the second knob.

By pulling up the cable, the water pressure was released, and the platform descended until the crossbar reached the first knob.

As the crossbar attached at one end to the cable operated between the two knobs, it follows that plaintiff's hand could not have been caught, as alleged, "between the knob on said rope and the iron bar" until the ascending elevator had reached the second floor.

Plaintiff in his testimony explained the accident as follows:

"Well, I rolled on the elevator and turned, had a knob to pull down on, and the elevator gave a quick jerk up; it grabbed my hand, and when I got my hand out my foot was caught, and I commenced hollering.
"Q. You saw what was it caught your hand?
"A. Caught my hand between the knob and the iron bar.
"Q. You got your hand out?
"A. Yes, sir; and in getting my hand out my foot was caught.
"Q. What did you do?"

Witness replied that he did nothing but holler, and after a lengthy examination by his counsel on incidental matters proceeded to testify as follows:

"Q. Now, where was your foot caught?
"A. The elevator caught it.
"Q. Where?
"A. I could not say, it was done so quick; it came down on me, and caught my foot between the elevator and the edge of the floor.
"Q. Your foot was caught between the elevator and the edge of the floor?
"A. Yes, sir.
"Q. Now, I will ask you to state again how it took place.
"A. Well, I was rolling the iron about 200 feet. I rolled it on the elevator, then I turned round and pulled up, and the elevator jumped and grabbed my hand, and when I got that out my foot was caught.
"Q. In trying to get your hand out your foot was caught?
"A. Yes, sir.
"Q. Now, that elevator, when it jumped up, how high did it jump?
"A. I couldn't tell you.
"Q. You felt it make a jump, and you tried to stop it?

"A. Yes, sir.
"Q. And your hand got caught; when you got that out, your foot was caught?
"A. Yes, sir."

The lengthy cross-examination of the plaintiff disclosed that he understood how to operate the elevator, but failed to extract from him any additional explanation as to how the accident happened.

We give below a few specimens of plaintiff's answers:

"Q. Tell the court whether or not the elevator dropped before you got your hand out.
"A. Well it was done so quick that, when I got my hand out, it had my foot. I don't know whether it dropped or not; it had my foot caught, it was done so quick; it made a jump and grabbed my hand, and in wrestling around getting it out, it caught my foot.
"Q. It went up and caught your hand?
"A. Yes, sir.
"Q. Did you get your hand out before the elevator dropped and caught your foot?
"A. Well, when I got my hand out, it had my foot caught.
"Q. It had your foot?
"A. Yes, sir.
"Q. It had your hand, also?
"A. Well, I don't know whether it had my hand or not. I know that it had my hand, and when I got it out, it had my foot; it might have been at the same time; I know I was hollering. It was done so quick."

After several other similar questions and answers, the following question was asked:

"Q. You really know nothing about it?
"A. No, sir; no more than I was hurt pretty badly."

[1] This confused story of the plaintiff, discredited by his own admissions, offers no reasonable explanation as to how the accident happened.

Plaintiff's injury can be explained on the theory that his hand was hurt and his toes were mashed by the descending platform of the elevator, and that he was standing at the time on the ground floor in such a position that his toes were caught between the edges of the platform and the concrete base.

Jack Williams, a witness for the defendant, testified that the accident happened while plaintiff, standing on the ground floor, was lowering the elevator.

It is obvious that plaintiff, occupying such a position, might have been injured by carelessly thrusting his right foot too far within the bed of the platform.

If we concede arguendo that plaintiff was standing on the platform at the time, it is difficult to imagine how he succeeded in getting the toes of his right foot beneath the edge of the descending platform.

Plaintiff, perhaps, if he had the time, might have accomplished the feat by standing with his back to the front of the elevator, and thrusting his right foot over and beneath the edge of the platform, or by assuming some other extraordinary position.

Suffice it to say that plaintiff's own testimony, contradicted and improbable as it is, fails to make out a case in his favor.

[2, 3] The mere fact of an accident does not carry with it a presumption of negligence or fault. The facts and circumstances connected with the accident must be shown, so as to enable the court to trace results to definite causes. Henry v. Brackenridge Lbr. Co., 48 La. Ann. 950, 20 South. 221.

An employé must not only establish fault on the part of the employer, but connect this fault with the injury as being its cause. O'Donnell v. American Mfg. Co., 112 La. 720, 36 South. 661; Neely v. Orleans Metal Co., 123 La. 1041, 49 South. 700.

[4] Plaintiff is bound to show that he lost his toes through some fault of the defendant company.

He has not done so, but, on the contrary, the evidence tends to show that the loss was caused by his own negligence.

The evidence shows that the elevator in question was in good running condition. Plaintiff's expert points out a few minor defects of construction in the elevator, none of which, it is shown, contributed directly to the injury complained of by the plaintiff.

The same may be said of gates, never used in elevators of the kind operated by the defendant, which have no wells or shaft openings, below the platform.

It is therefore ordered that judgment below be reversed, and it is now ordered that plaintiff's suit be dismissed, with costs in both courts.

On Rehearing.

SOMMERVILLE, J. The former opinion of the court is reinstated, and made the opinion of the court.

MONROE, C. J., dissents.