BROWN, C.J.
1 í Defendants, Saul Hakim and North American Land Development Corporation (“NALD”), have appealed from a judgment of the Monroe City Court ordering NALD to return to plaintiff her security deposit and first month’s rent totaling $850.00. For the reasons set forth below, the judgment of the trial court is hereby reversed.

Facts

On June 14, 2002, Wanda Harris executed a lease agreement with NALD, acting through its manager, Saul Hakim, to rent an apartment for a one-year term beginning on July 1, 2002, and running through June 30, 2003. The lease provided for a one-time refundable security deposit of $425 and a monthly rent of $425. The document reflects that no payment had been made towards the security deposit as of the time the lease was executed. While the lease provided for a term to begin on July 1, 2002, it also contained the following provisions regarding the beginning of occupancy as it related to the financial obligations of the tenant under the lease:
3. SECURITY DEPOSIT: Tenant has agreed to pay the full security deposit before occupancy. * * *
* * *
5. DELAY IN DELIVERY OF POSSESSION: If Landlord is unable to provide possession of the premises on the date of the commencement of the Lease caused by refusal of occupant(s) to surrender possession or for any other reason, Landlord shall not be liable for failure to provide possession on that date. However, rent payable under this Lease shall be abated until possession is provided. If the premises are not delivered within thirty (30) days from the date promised, Tenant may terminate this Lease by written notice. If the Lease is not terminated, the Lease termination date shall not be extended.
| ¡.To pay the up front costs (security deposit and first month’s rent) of obtaining the apartment, Harris applied for financial assistance with the Monroe Housing Authority through the Temporary Assistance for Needy Families (“TANF”) program which uses grant money provided by the State of Louisiana to assist low income families. According to the Monroe Housing Authority’s records, Harris made her application for assistance on June 18, 2002. The Monroe Housing Authority subsequently issued a TANF check for $850.00 on July 10, 2002, made payable to NALD and Harris. The check was then mailed to NALD.
Harris testified on her own behalf and gave somewhat confusing and sometimes conflicting testimony. Harris stated that she paid the security deposit and first month’s rent on July 1, 2002, by giving Hakim a check, but on -cross-examination admitted that she paid these funds with the TANF check which was not issued until July 10, 2002. She then testified that she had actually tendered $175 in cash on July 1, 2002, and not the entire amount of the security deposit and first month’s rent. She admitted that she had no idea when the TANF check was received by NALD, but testified that she had endorsed the check at the Monroe Housing Authority before it was mailed to NALD. Harris also stated that she requested occupancy of the apartment on July 1, 2002, but was told that the apartment was not ready. She testified that she received the keys two *509 weeks prior to August 1, 2002, but because she was informed that she would owe another $425 on August 1, she never moved into the apartment.
| ¡¡Cheryl Farmer is the employee of the Monroe Housing Authority charged with administering the TANF program. Farmer confirmed that the TANF check was issued to Harris on July 10, 2002, and pursuant to ordinary procedures would have been mailed the following day. Farmer also testified that aid recipients never endorsed checks prior to mailing and that Harris’s assertion to that effect was in error.
Hakim testified that Harris signed a lease on June 14, 2002, and that she was shown the apartment which was available and in ready condition. Hakim testified that Harris returned several days later and paid $75 towards the deposit and that she was informed at that time that she would not be allowed to move in until the full deposit was paid. He testified that the TANF check was received sometime between July 15 and July 20 and that Harris was called to come in to the rental office and endorse the check. Hakim alleged that Harris came in on July 23, endorsed the check and received the keys to the apartment. Hakim further testified that he did not contact Harris about the rent for August until it became due. Hakim’s testimony about Harris’s endorsement of the check on July 23 was corroborated by NALD’s bookkeeper, Terry Stockton.
A copy of the TANF check evidences that it was issued on July 10, 2002, was endorsed on the back by Harris and was processed for deposit on July 26, 2002. A copy of a letter from Harris’s attorney to Hakim dated August 11, 2002, indicates that Harris received the keys on July 23 after the deposit and first month’s rent had been paid. The letter also contends that the attorney and Hakim had a conversation on July 30 in which Hakim ^asserted that the August rent was still owed by Harris. Lastly, the letter reflects that the keys were being returned therewith in the event NALD continued to refuse to provide an abatement of the rent for the month of July.
On December 9, 2004, Harris filed suit against Hakim and NALD for breach of contract seeking return of the $850. In her petition, Harris claimed that she was not provided keys to the apartment until July 26, 2002, and that defendants refused to abate the rent for failing to timely deliver possession. The matter was tried on April 12 and July 27, 2005. After hearing all the evidence, the trial court rendered judgment in favor of Harris based on the factual finding that she had not been provided the keys to the apartment “until July 26, 2004 (sic), which was some days in excess of ten after the [TANF] check was issued.” A judgment awarding Harris $850 in damages was signed on September 12, 2005. The instant appeal by Hakim and NALD followed.

Discussion

Defendants argue that the trial court erred in concluding that they failed to deliver possession of the apartment to Harris until July 26, 2002, in a manner that triggered the rent abatement provisions of the lease agreement.
An appellate court may not set aside a trial court’s factual findings absent clear or manifest error. Brandt v. Engle, 3416 (La.06/29/01), 791 So.2d 614; Thompson v. Coates, 29,333 (La.App.2d Cir.5/7/97), 694 So.2d 599, writ denied, 97-1442 (La.9/26/97), 701 So.2d 985. To reverse a | ¡¡trial court’s factual determination a court of appeal must find from the record that there is no reasonable factual basis for the findings and that the findings are clearly wrong. Id. A legal error occurs when a trial court applies incorrect principles of *510 law and such errors are prejudicial. Lasha v. Olin Corp., 625 So.2d 1002 (La. 1993). Such errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. Id.
After a thorough review of the record, we find that no reasonable reading of the evidence presented supports the factual finding of the trial court that Harris was not provided the keys to the apartment until July 26, 2002. Harris herself testified that she received the keys to the apartment two weeks prior to August 1, 2002. All other evidence points to the fact that she received the keys no later than July 23, 2002. No evidence was introduced which supports the trial court’s finding that the keys, and thus possession of the apartment, were delivered on July 26, 2002. Accordingly, the trial court’s conclusion in this regard was clearly wrong.
The trial court committed legal error by concluding that under the lease NALD had an obligation to deliver possession of the apartment to Harris on the date on which the two-party check was issued by the Monroe Housing Authority. The lease required that the security deposit be paid before occupancy by the tenant. While the term “paid” is not defined within the lease, the plain and ordinary meaning of the term does not encompass the issuance of a check by a third party on behalf of the tenant (Harris), made payable to the obligee and the lessor (NALD), but which has not been | fidelivered to the lessor. Absent delivery and endorsement by Harris, NALD had not received payment by the mere issuance of the check. To the contrary, “payment” was not complete until the check was delivered to NALD and endorsed by Harris.
These fact-finding and legal errors combined so as to materially affect the outcome of this case. The evidence establishes that the apartment was held for Harris beginning on July 1, 2002, pursuant to the lease agreement, but that she was not allowed occupancy until sometime between July 15 and July 23. The evidence also establishes that her security deposit and first month’s rent was not paid until sometime between July 15 and July 23. Harris’ own lawyer establishes in his letter to Hakim that Harris received the keys to the apartment on July 23. Since Harris’s deposit had not been paid, and the check from TANF would not be issued until July 10, the lease provisions prohibited her from demanding occupancy. The record before us only establishes that Harris was denied occupancy of the apartment pending her payment of the security deposit and as such the rent abatement provisions for the landlord’s inability to deliver possession were never triggered.[1]

Conclusion

For the foregoing reasons, the judgment of the trial court is hereby reversed. Costs of this appeal are to be borne by Wanda Harris.
REVERSED.

. We again note that Harris only paid $75; the $850 check was written by the Monroe Housing Authority.