WILLIAMS, J.
The defendants, Marcus Coleman and the insurer, Go Auto Insurance Company, appeal a trial court's judgment in favor of the plaintiff, Michael Antley, finding that Coleman was at fault in causing an automobile accident. The defendants also appeal the trial court's award of damages to the plaintiff in the amount of $23,429.43. For the following reasons, we affirm.
FACTS
On February 13, 2014, at approximately 7:00 a.m., the plaintiff, Michael Antley, was operating a 2004 Chevrolet Avalanche pickup truck and was traveling eastbound on Interstate 20 ("I-20") in Monroe, Louisiana. The defendant, Marcus Coleman, was the permissive driver of a 2008 Chevrolet Equinox owned by Latoya Rodgers and insured by Go Auto Insurance Company ("Go Auto"). Coleman was also traveling eastbound on I-20.
Due to freezing temperatures the previous night, ice had accumulated on the three-lane Interstate. The plaintiff was driving in the far left lane at a speed of *610 approximately 62-63 miles per hour ("mph"); Coleman was traveling in the center lane at approximately 40-50 mph.[1]
It is undisputed that at some point, Coleman hit a patch of ice in the roadway and momentarily lost control of his vehicle. However, the plaintiff's version of the events that followed vastly differed from Coleman's version. The plaintiff testified that when Coleman began to swerve, he (Coleman) veered into his (the plaintiff's) lane of travel and struck the right front end of his truck. The plaintiff also asserted that when Coleman failed to stop after the collision, he pursued Coleman, flashing his lights and honking his horn. However, Coleman refused to stop. While pursuing Coleman, the plaintiff called the Monroe Police Department ("MPD") to report the accident. The plaintiff provided the police dispatch operator with Coleman's license plate number. The operator advised the plaintiff to discontinue his pursuit of Coleman, pull over his vehicle and wait for the arrival of a police officer. The plaintiff and Coleman exited I-20 and merged onto Highway 165-North. The plaintiff pulled into the parking lot of a hotel and waited for a police officer to arrive. He maintains that he never lost sight of Coleman's vehicle from the time of the collision and when he pulled into the parking lot of the hotel.
Conversely, Coleman testified that his vehicle "swayed," but he did not swerve into the plaintiff's lane of travel. He insisted that his vehicle did not make contact with the plaintiff's vehicle. Coleman maintained that he did not feel an impact, he did not see anyone flashing their lights, and he did not hear anyone honking their horn on the morning of February 13, 2014. Coleman stated that he arrived at his job per his usual routine, and he did not learn of the alleged accident until later that morning.
Following the incident, the plaintiff was met by Officer Rodrick Banks of the MPD, who prepared a report of the incident. The plaintiff informed the officer that he did not feel injured, and he proceeded to his job, where he worked a full day as a plumbing apprentice. He later stated that he began experiencing pain in his neck, shoulders and back later that day.[2]
During the investigation of the accident, Officer Banks learned that the license plate number provided by the plaintiff belonged to a Chevrolet Equinox owned by Rodgers. Officer Banks contacted Rodgers by telephone; she confirmed that she was the owner of the vehicle and identified Coleman as the driver of her vehicle that morning. Thereafter, Rodgers called Coleman and informed him that she had been contacted by Officer Banks regarding an automobile accident. Rodgers and Coleman went to the police department and met with Officer Banks. The officer inspected the rear bumper of Rodgers' vehicle but did not see anything that he would consider "fresh damage." Officer Banks was unable to determine whether Rodgers' vehicle had been involved in a collision.[3]
Subsequently, the plaintiff filed a lawsuit naming Coleman, Rodgers and Go Auto as defendants.[4] He alleged that he sustained personal injuries and property damage as *611 a result of the automobile accident. The defendants answered the lawsuit, denying the plaintiff's allegations.
During a bench trial, the parties stipulated to the authenticity and the admissibility of the plaintiff's medical records. The parties further stipulated as follows: the medical services provided by Dr. Dan Holt, the plaintiff's treating chiropractor, were reasonable and necessary; the medical care provided by Dr. Holt resulted from the February 13, 2014, automobile accident; the medical expenses charged by Dr. Holt amounted to $5,825; the plaintiff suffered lost wages in the amount of $648; and the plaintiff's property damage amounted to $706.43.
The plaintiff testified that he was driving in the far left lane when he first noticed Coleman's vehicle as it was merging onto the Interstate. He stated that the collision occurred near the Jackson/Hall Street exit when Coleman encountered a patch of ice on the roadway. The plaintiff also testified that Coleman "clipped" the front passenger side of his vehicle when he (Coleman) attempted to change lanes.
Coleman testified that he was driving Rodgers' vehicle on the morning of the accident and that he saw the plaintiff's vehicle in his rearview mirror. Coleman admitted that he "hit a patch of ice" and momentarily lost control of the vehicle; however, he insisted that he did not strike the plaintiff's vehicle. As stated above, Coleman testified that he did not feel an impact, he did not see any flashing lights and he did not hear the plaintiff's horn. Further, Coleman stated that the only vehicles traveling on the Interstate that morning were the one he was driving, the plaintiff's vehicle and a "green Ford" that was traveling some distance ahead of him.
Rodgers testified that there was no damage to her vehicle prior to the day of the accident, other than some minor scratches. She stated that her Go Auto insurance adjuster informed her that the large scratch on the rear bumper of her vehicle "most likely" occurred when someone backed into her vehicle while it was parked in a parking lot.
After hearing the testimony and reviewing the evidence, the trial court found that an accident occurred and the accident was solely caused by Coleman. The court stated:
* * *
[A]ll of the testimony tends to indicate that it was Mr. Coleman's vehicle and Mr. Coleman's vehicle only that was involved in this accident and caused the collision between his vehicle and that of the vehicle being driven by [the plaintiff]. So the court is clear that while Mr. Coleman emphatically has indicated that he was not involved in this collision, it is clear to the court by a preponderance of the evidence and the totality of all of the evidence in this record Mr. Coleman did veer out of his lane and caused a collision between his vehicle and * * * the vehicle being driven by [the plaintiff.]
* * *
[T]he court finds that [the plaintiff] suffered both general and special damages in this case, mental and physical pain and suffering as a result of the accident, as well as special damages[.]
* * *
The court awarded to the plaintiff a total of $23,429.43, as follows: general damages in the amount of $16,250, and special damages in the amount of $7,179.43 (medical expenses: $5,825, lost wages: $648, and property damages: $706.43).[5] Additionally, *612 the court awarded court costs and legal interest from the date of judicial demand.
The defendants appeal.
DISCUSSION
The defendants contend the trial court was clearly wrong in finding that a collision occurred between the two vehicles. They argue that the plaintiff failed to prove that Coleman breached a duty of care or that Coleman's actions caused his injuries. According to the defendants, the trial court erroneously relied upon the plaintiff's self-serving testimony, rather than that of Officer Banks, a 19-year veteran of the MPD. Further, the defendants maintain that the evidence established that there was virtually no damage to the Coleman vehicle (a minor scratch on the bumper), while the damage to the plaintiff's vehicle was more substantial (major scuffs, scratches and a broken and detached light).
A motorist has a duty to keep his vehicle under control and to maintain a proper lookout for hazards. Harrell v. City of Shreveport , 47,011 (La. App. 2 Cir. 5/23/12), 92 So.3d 1180, writ denied , 2012-1443 (La. 10/8/12), 98 So.3d 860 ; Williams v. Travelers Indem. Co. , 49,961 (La. App. 2 Cir. 7/22/15), 171 So.3d 436. A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. Edwards v. Horstman , 96-1403 (La. 2/25/97), 687 So.2d 1007 ; Harrell v. City of Shreveport , supra .
An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Cole v. State Dept. of Public Safety & Corr. , 2001-2123 (La. 9/4/02), 825 So.2d 1134 ; Stobart v. State through Dep't. of Transp. & Dev. , 617 So.2d 880 (La. 1993) ; Jewitt v. Alvarez , 50,083 (La. App. 2 Cir. 9/30/15), 179 So.3d 645. Our jurisprudence summarizes the manifest error/clearly wrong standard of review as follows:
To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart , supra ; Jewitt , supra .
Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Cole , supra ; Rosell v. ESCO , 549 So.2d 840 (La. 1989). Moreover, where the factfinder's conclusions are based on determinations regarding credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell , supra ; Wilhite v. Thompson , 42,395 (La. App. 2 Cir. 8/15/07), 962 So.2d 493.
In the instant case, the trial court found that the evidence was sufficient to establish that Coleman caused an accident between his vehicle and that of the plaintiff. During the trial, the plaintiff testified that he saw the Coleman vehicle start to "sway" and cross into his lane of travel. He stated that he attempted to apply his brakes; however, the Coleman vehicle crossed into his lane and "clipped" the *613 front end of his truck. Officer Banks inspected the plaintiff's vehicle and noted damage on the front passenger side.
Coleman testified that he encountered a "patch of area where that ice was real heavy" and he "ventured into that far left lane[.]" However, he denied being involved in an automobile collision. He also testified that he saw "a white Chevrolet truck in my rearview mirror," but he stated that he did not come close to the vehicle. On cross-examination, Coleman admitted that he hit a small patch of ice, which resulted in his vehicle having a "wobble effect." According to Coleman, he saw the Chevrolet truck before he left the center lane and moved into the far left lane. However, when confronted with his prior deposition testimony, Coleman admitted that he saw the truck "when [he] ventured from the center lane to the left lane[.]"
Officer Banks did not witness the accident. However, he inspected both vehicles on the day of the accident. Officer Banks observed a "scuff mark" on the right front fender of the plaintiff's vehicle that seemed to corroborate the plaintiff's description of the accident. He testified that during his inspection of the Rodgers/Coleman vehicle, he did not see "anything that looked like fresh damage." However, he admitted that he only looked at the rear bumper of the vehicle and did not inspect the side quarter panels.
The trial court had the opportunity to observe the tone and demeanor of the witnesses; the court clearly believed the plaintiff's testimony that Coleman's vehicle entered his lane of travel and collided with his vehicle. As stated above, the trial court's factual and credibility determinations are entitled to great weight on appeal. Therefore, we find that the trial court did not err in concluding that the plaintiff met his burden of proving that an automobile collision occurred and that Coleman was solely at fault in causing the accident. This assignment lacks merit.
The defendants also contend the trial court abused its discretion in awarding $23,429.43 in damages. They argue that the amount is excessive and far exceeds the amount awarded in factually similar cases. According to the defendants, based upon the minor impact between the vehicles and the small amount of damage to the vehicles, the plaintiff was entitled to zero to nominal damages.
One injured through the fault of another is entitled to full indemnification for damages caused thereby. Wainwright v. Fontenot , 2000-0492 (La. 10/17/00), 774 So.2d 70 ; Smith v. Escalon , 48,129 (La. App. 2 Cir. 6/26/13), 117 So.3d 576 ; Caskey v. Merrick Const. Co., Inc. , 46,886 (La. App. 2 Cir. 3/14/12), 86 So.3d 186, writ denied , 2012-0847 (La. 6/1/12), 90 So.3d 442. General damages are those which may not be fixed with pecuniary exactitude; instead, they involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or lifestyle which cannot be definitely measured in monetary terms. Duncan v. Kansas City S. Ry. Co. , 2000-0066 (La. 10/30/00), 773 So.2d 670, cert. dism. , 532 U.S. 992, 121 S.Ct. 1651, 149 L.Ed.2d 508 (2001) ; Smith , supra ; Caskey , supra .
Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompany an injury. McGee v. A C & S, Inc. , 2005-1036 (La. 7/10/06), 933 So.2d 770 ; Smith , supra ; Caskey , supra . The elements of physical pain and suffering and associated mental anguish are conceptually related and, to a large extent, overlapping; therefore, they are difficult to precisely distinguish. Smith , supra ; Caskey , supra . Also included in general *614 damages can be an award for loss of enjoyment or quality of life. Miller v. Lammico , 2007-1352 (La. 1/16/08), 973 So.2d 693 ; Smith , supra ; Caskey , supra . These damages refer to the detrimental alterations of a person's ability to participate in the activities or pleasures of life that were formerly enjoyed. McGee , supra ; Smith , supra ; Caskey , supra .
"Special damages" are those which must be specially pled or have a ready market value, that is, the amount of the damages supposedly can be determined with relative certainty. Smith , supra ; Dotie v. Safeway Ins. Co. of La. , 46,840 (La. App. 2 Cir. 3/14/12), 87 So.3d 942. Some special damages, such as medical and related expenses, cost to repair or replace damaged property, loss of wages, etc., are easily measured. Id. A plaintiff is required to prove special damages by a preponderance of the evidence, and the district court's findings in this respect are subject to a manifest error standard of review. Id.
The trial court has vast discretion in awarding general damages and its determination should rarely be disturbed. La. C.C. art. 2324.1 ; Youn v. Maritime Overseas Corp. , 623 So.2d 1257 (La. 1993) ; Smith , supra . On appellate review, the initial inquiry is whether the trier of fact abused its vast discretion in assessing damages. If it is determined that the trial court abused its discretion, then the appellate court may review prior awards to determine the highest or lowest point which is reasonably within the trial court's discretion. Smith , supra ; Moody v. AIG Ins. Cos. , 43,946 (La. App. 2 Cir. 1/14/09), 999 So.2d 1207. The appellate court should increase or reduce an award only when the award is beyond that which a reasonable trier of fact could assess for the particular injury, to the particular plaintiff, under the particular circumstances of the case. Youn , supra ; Smith , supra .
In the instant case, prior to trial, the parties entered into a joint stipulation "with regards to the special damages relating to Dr. Holt that the bill that Dr. Holt submitted as a result of any treatment that he provided to the plaintiff in this case came to a total of [$5,825] and that the services that he performed for the plaintiff, Mr. Antley, were reasonable and necessary[.]" The parties also stipulated "as to the authenticity and admissibility of the [plaintiff's] wage record" that he missed six days of work after the accident and that "Dr. Holt took [the plaintiff] off work for a week." Additionally, the parties entered into a stipulation that the plaintiff suffered property damage that was determined by Go Auto to be a total of $706.43.
Further, the plaintiff testified at trial with regard to the injuries he sustained as a result of the accident. He testified as follows: he did not feel any pain immediately following the accident because his "adrenaline was running high"; he went to work after the accident and his boss told him to "take it easy" that day; later that evening, he began to feel "a little pain" in his lower back and shoulders; two years prior to the accident, he strained a muscle in his back; he had recovered from that prior injury at the time of the instant accident; he was not feeling any back or shoulder pain prior to the accident at issue; he went to Dr. Holt for medical treatment for his back and shoulder pain the day after the accident; he treated with Dr. Holt from February 14, 2014, until October 8, 2014; he missed six days from work because "Dr. Holt did not want me to do anything strenuous as far as my job that I do ... and he did not want me to strain any-any muscle or anything in my back or my shoulders"; his injuries affected his performance as a plumbing apprentice because *615 he was unable to lift heavy equipment such as water heaters; his attempt to turn pliers to tighten objects caused pain in his shoulders; his injuries affected his ability to play with his children, who were two and four years old at the time of the accident; he was unable to mow his lawn or do laundry; he began to feel better after approximately three weeks of treatment, but he continued his treatment as prescribed; by October, his pain was "a lot better" but he was still unable to perform certain tasks, such as lifting a jack hammer; and he continued to experience "a little bit of pain in [his] lower back," but the pain in his shoulders had resolved.
After reviewing this record, we are unable to say that the trial court abused its vast discretion in awarding the plaintiff $16,250 in general damages, and $7,179.43 in special damages. As stated above, the plaintiff provided uncontroverted testimony regarding the extent of his injuries, and his medical records were introduced into evidence. Additionally, the defendants stipulated that the treatment provided to the plaintiff by Dr. Holt was a result of the accident that occurred February 13, 2014, and that the treatment was reasonable and necessary. Further, the record reveals that the plaintiff also provided uncontroverted testimony that the six days he missed from work in February 2014 were due to injuries he sustained in the accident. Further, the defendant, Go Auto, provided the estimate of the plaintiff's property damage. The parties stipulated that the estimated costs represented the amount of damage to the plaintiff's vehicle as a result of the accident. This assignment lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the trial court's judgment. Costs of this appeal are assessed to the defendants, Marcus Coleman and Go Auto Insurance Company.
AFFIRMED.

The posted speed limit on I-20 within the city limits is 60 mph.

The plaintiff began treating with a local chiropractor, who ordered him to refrain from work February 14-17, 2014. The plaintiff was treated by the chiropractor until October 8, 2014.

Coleman was cited for driving without a driver's license.

Rodgers was later dismissed from the lawsuit with prejudice.

The trial court inexplicably awarded $15,706.43 of the judgment against Coleman and Go Auto jointly and in solido , and $7,723 against Coleman individually. The plaintiff did not appeal this portion of the judgment.