Judgment rendered September 23, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,522-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CARL COLLINS                                   Plaintiff-Appellee

versus

DAVID CREIGHTON AND                     Defendants-Appellants
STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY

* * * * *

Appealed from the
Monroe City Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2017CV90149

Honorable Tammy D. Lee, Judge

* * * * *

K. DOUGLAS WHEELER                      Counsel for Appellants


THE LAW FIRM OF EDDIE CLARK        Counsel for Appellee
& ASSOCIATES, L.L.C.
By:  Eddie M. Clark


* * * * *

Before GARRETT, STONE, and McCALLUM, JJ.

**GARRETT, J.**

In this case arising from a minor vehicular incident in the parking lot of a community college, the defendant driver, who was found to be 100% at fault, and his insurer appeal from a city court judgment which awarded damages to the plaintiff driver. For the reasons assigned below, we reverse the lower court judgment.

## FACTS

On July 7, 2016, the plaintiff, Carl Collins, was involved in an auto accident in a Walmart parking lot in which he and another driver were apparently backing up across from each other. He was treated by Dr. Dan Holt, a chiropractor, from July 11 to November 11, 2016, for injuries sustained in this accident. These injuries were primarily related to his neck, back, and shoulders.

On November 14, 2016, Collins was involved in the parking lot incident before us now, which occurred around noon at Louisiana Delta Community College in Monroe. The 58-year-old plaintiff was driving his Kia Optima sedan through the parking lot. He was on campus to pick up his wife, who was an instructor at the college. David Creighton, the director of a faith-based recovery home who was taking courses in a counseling program, had finished classes for the day and, like many other students, was preparing to leave campus. Creighton began backing his extended-cab Chevy Silverado truck out of a parking space but stopped when he saw the Collins car approaching in the travel lane. Collins did not stop. The front passenger side of Collins's car made contact with the trailer hitch on the back of Creighton's truck. Collins's front passenger tire was punctured, and there was damage to his front right fender. The accident was recorded on

the community college's video surveillance system. On December 6, 2016, Collins went back to Dr. Holt for treatment of neck, back, and shoulder issues.

On September 13, 2017, Collins filed suit against Creighton and his insurer, State Farm Mutual Automobile Insurance Company. Collins alleged that the accident was caused by Creighton's "negligence and/or inattentiveness." He further asserted that, as a result of the accident, he sustained serious injuries, including injuries to his neck, back, shoulders, lower extremities, feet, and head. He contended that the collision caused his injuries or aggravated his preexisting injuries. The defendants denied the allegations and contended that Collins was solely at fault in causing the accident because he did not keep a proper outlook and failed to see what should have been seen. In the alternative, they maintained that, if any damages were awarded, they should be apportioned pursuant to comparative fault.

A bench trial was held in Monroe City Court in October 2018. The plaintiff testified, as did his wife, Ilon Michelle Jenkins Collins, and Dr. Holt. Also testifying were Creighton; Harry Downing Black, the chief of campus police; and Cassandra Jones, an administrative aide for the campus police. All three of these witnesses testified that, immediately after the accident, Collins admitted that he was looking toward the school for his wife at the time of the collision.

At the conclusion of trial, the trial court ruled from the bench that Creighton was 100% at fault in causing the accident. It found that he had a "tremendous burden" to keep a proper lookout as he backed up, that he had a duty to make certain that persons proceeding in the right-of-way were

2

protected, and that he failed to do so. The court further ruled that it did not find that, before maneuvering a backward movement of his vehicle, Creighton made "absolutely certain" that he would be able to "fully negotiate the backward movement before proceeding forward." It concluded that the accident was solely caused by Creighton's negligence "in not making certain that he had a clear outlook before attempting to place, or place his vehicle in reverse and proceed forward." The trial court did not consider or discuss any duty on Collins's part. The court found both Black and Jones lacked credibility. It also strongly criticized Black's investigation of the accident. Briefs on quantum were ordered. The trial court subsequently awarded the plaintiff general damages of $12,500 and special damages of $5,230. Court costs were assessed against the defendants; that figure included an expert witness fee of $2,250 for Dr. Holt. Judgment in conformity with the trial court's ruling was signed on January 11, 2019.

The defendants filed a motion for new trial on liability. They argued that the trial court's assessment of 100% fault to Creighton was contrary to the law and evidence. In support of their argument, they cited *Lawrence v. Groan*, 42,842 (La. App. 2 Cir. 1/9/08), 973 So. 2d 959, which discusses liability in parking lot collisions. The plaintiff filed an opposition. Following a hearing on April 15, 2019, the trial court denied the motion. It stated it had previously found that Creighton "simply was not being attentive and was not being a careful and prudent driver as he should have been." It then added that it was finding Collins "did all that he could." The court stated that there were "vast and remarkable differences" between the instant case and the *Lawrence* case but did not articulate them. Judgment was signed on April 22, 2019.

3

The defendants appealed. They assert that the trial court erred in the following respects: (1) finding Creighton solely at fault; (2) denying their motion for new trial; (3) awarding excessive special and general damages; and (4) awarding an excessive expert witness fee to Dr. Holt. Because we find merit to the defendants' first assignment of error, we pretermit consideration of the remaining ones.

## LIABILITY

The defendants assert that the trial court erred in finding Creighton 100% at fault in causing the accident. We find merit to this argument.

### *Law*

An old and well-established rule of law states that the occurrence of an accident does not carry a presumption of negligence or fault. *Franklin v. W.K. Henderson Iron Works & Supply Co.*, 141 La. 725, 75 So. 661 (1917); *Brooks v. Kirkpatrick*, 175 So. 2d 342 (La. App. 2 Cir. 1965); *Doucet v. Hornet Serv. Co.*, 2019-212 (La. App. 3 Cir. 11/20/19), 2019 WL 6167914, ___ So. 3d ____. Without the existence of a duty and a breach of that duty that is a cause-in-fact of damage, there is no negligence. *Doucet*, *supra*.

In civil suits, the plaintiff has the burden of proving the negligence of the defendant by a preponderance of the evidence. *Smith v. Safeway Ins. Co. of La.*, 49,136 (La. App. 2 Cir. 8/13/14), 146 So. 3d 944. In an action for damages, the degree or percentage of fault of all persons causing or contributing to the injury shall be determined. La. C.C. art. 2323.

In negligence cases, we use a duty-risk analysis to determine whether liability exists under the facts of a particular case. Under this analysis, a plaintiff must prove that the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the

4

requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached. *Lawrence*, *supra*.

A motorist is not absolved from liability because of his failure to see what he could have seen by the exercise of due diligence, and a motorist's duty to look ahead and observe never ceases. *Deshotels v. S. Farm Bureau Cas. Ins. Co.*, 245 La. 23, 156 So. 2d 465 (1963); *Simms v. Sims*, 181 So. 2d 449 (La. App. 1 Cir. 1965); *Pedigo v. Travelers Ins. Co.*, 124 So. 2d 400 (La. App. 3 Cir. 1960). A well-settled principle is that for a driver to look and fail to see what he should have seen is the equivalent of the driver not looking at all and is negligence. *Hamilton v. Wild*, 40,410 (La. App. 2 Cir. 12/14/05), 917 So. 2d 695; *Winfield v. Dih*, 2001-1357 (La. App. 4 Cir. 4/24/02), 816 So. 2d 942; *Jones v. Armstead*, 169 So. 2d 268 (La. App. 1 Cir. 1964); *Sharp v. Travelers Indem. Co.*, 122 So. 2d 833 (La. App. 1 Cir. 1960).

A motorist has a duty to keep his vehicle under control and to maintain a proper lookout for hazards. A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. *Antley v. Rodgers*, 52,168 (La. App. 2 Cir. 6/27/18), 251 So. 3d 607; *Harrell v. City of Shreveport*, 47,011 (La. App. 2 Cir. 5/23/12), 92 So. 3d 1180, *writ denied*, 12-1443 (La. 10/8/12), 98 So. 3d 860. A backing motorist is tasked with exercising reasonable care under the circumstances. *Doucet*, *supra*.

If a legal error by the trial court interdicts the fact-finding process, the manifest error standard of review is no longer applicable, and, if the record is otherwise complete, the appellate court should conduct an independent *de*

*novo* review of the record. *Singleton v. Singleton*, 51,476 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1134; *In re Succession of Holcomb*, 47,979 (La. App. 2 Cir. 5/29/13), 117 So. 3d 264, *writ denied*, 13-1537 (La. 10/4/13), 122 So. 3d 1023. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. *Singleton*, *supra*; *Harris v. Hakim*, 40,868 (La. App. 2 Cir. 3/16/06), 924 So. 2d 507.

### *Trial Testimony*

Creighton, who was 42 years old at trial, testified that he had completed his classes for the day and was preparing to leave campus. It was about noon, and other people were also leaving campus. As was his usual habit, he talked to his wife on his cellphone as he approached his truck. Once he entered the vehicle, he placed the cellphone on the center console and continued speaking to his wife on Bluetooth, utilizing a headset. He started his truck and prepared to back it out of the parking space. On the passenger side of the truck, there was a small SUV (possibly a Toyota 4Runner) which blocked his view of oncoming traffic from that direction. Creighton physically turned in his seat and put his arm on the back of the passenger seat as he looked behind him. He looked through the right back glass and passenger window as he began slowly backing up. He testified that, because it was lunchtime, it was busy in the parking lot and he was aware of the need for backing up slowly. He rode his brake, as opposed to going "inch by inch." He backed up slowly until he could see oncoming traffic. He estimated that he went back about two feet. He then observed Collins's car coming toward him. As soon as he saw the car, he stopped. At

6

this point, he estimated that Collins's car was about three car lengths away from his truck. Creighton testified he had an unobstructed view of the other driver, and Collins was looking toward the school. He stated that his truck was stopped when Collins ran into him. Collins never took any sort of evasive action or honked at him; instead, he just drove straight as though he never saw the truck.

Creighton stated that he did not honk his horn at Collins because he assumed that Collins was going to move over and would not hit him. He further indicated that he did not have enough time between seeing Collins and being hit to put his truck in drive and move forward. He noted that Collins only hit about a half inch to one inch of the three-way trailer hitch on the back of his truck. By Creighton's estimate, the hitch protruded approximately seven inches. Creighton further testified that his brake lights and backup lights were working properly that day. Creighton stated that he could not have done anything differently.

Creighton testified that, after the collision, he got out of his truck and checked on Collins. He said that Collins began "screaming and hollering" at him, accusing Creighton of hitting him. When Creighton responded that Collins had run into him, Collins stated that he had been looking for his wife. According to Creighton, Collins said this repeatedly after the accident. Creighton went to get help. When he returned, Collins's wife was there, "fussing" at him.

Collins, an Army veteran who was semiretired but worked occasionally as a substitute teacher, testified that he usually picked up his wife around noon after she got out of class and then brought her back later. As a result, he was aware that there were more cars in the parking lot at that

time of day and that he had to be more alert. He stated that he looked toward the school for his wife when he first turned into the parking lot. However, he stated that he never looked in that direction again once he turned down the row where the accident occurred. He then testified that he was looking straight ahead but "scanning" toward the left (the direction of the school) as he continued through the parking lot. He described "scanning" as his eyes moving a fourth of the way but his head not moving. He said the accident happened in "a split second," and he had no warning or an opportunity to honk his horn. He stated he never saw Creighton's brake lights before impact.

On cross-examination, Collins stated that he was not sure if he noticed Creighton's vehicle backing up. He stated that he believed the Creighton truck began backing up when his car was only one parking space away. When shown the video, he admitted that Creighton began backing up and then stopped before the vehicles made contact. However, he refused to concede that his car was more than one parking space away when Creighton began backing up, insisting that something on the video might be "reflecting." He also refused to agree that he should have seen Creighton if he had been looking forward.

Collins testified at trial that he was going only 10 to 15 mph at the time of the collision. However, he was confronted with an automobile accident questionnaire he filled out at Dr. Holt's office in which he stated that he was going 20 mph and his car "incurred severe damage." He admitted under questioning by the defendants' counsel that his car did not

sustain severe damage overall and that neither vehicle was moving very fast.[1]

Collins admitted talking to Black after the accident. However, he denied telling him or anyone else that he was looking toward the building to see if his wife had come out when he collided with Creighton. In fact, he stated that Creighton, Black, and Jones all lied when they testified that he had made such an admission to them after the accident. Although he denied talking to Jones, he did admit seeing her at the accident scene.

Black testified that he had been chief of campus police for about four years and that he had 41 years of law enforcement experience. He said campus police investigated parking lot accidents as a service or courtesy to students. Basically they gathered information such as insurance so the students would have it. Black spoke to both drivers at the accident scene. He did not record them on audio, write his report at the scene, or take handwritten statements from them. Black testified that he wrote the report shortly after gathering the information and typed it on his computer. In his report, which was used during the trial but was not admitted as an exhibit, he listed only the drivers as witnesses. He testified that he would have supplemented his report if he had learned of any other witness. Although it was not uncommon for Jones to be in the parking lot, Black testified that he did not recall her telling him that she saw the accident.

---

[1] While going over the automobile accident questionnaire for the November 2016 accident, defendants' counsel first questioned Collins about the 20 mph estimate. He then asked Collins what he checked for "approximate speed of your vehicle" on the next page, and Collins replied, "Moving fast." Review of the document shows that, under the section for his own car, he checked "Moving at apprx. ___MPH" and filled in "20" for the mph. In the section pertaining to "THE SECOND VEHICLE INVOLVED IN THE ACCIDENT," he marked "Moving Fast" under the section which was miscaptioned "Approximate Speed of your Vehicle."

According to Black, Creighton told him that the SUV next to him "kinda" blocked his view as he was backing up. He stopped when he saw Collins's car, which continued and ran into his truck. Creighton stated that it appeared to him that Collins was not looking forward at the time of the collision. Black observed no damage to Creighton's truck. As to Collins, Black's report recounted that he said he was driving through the parking lot to pick up his wife. Collins further told him that he was looking toward the building to see if she had come out when he collided with the other vehicle. Collins said the truck was partially backed out of its parking space and stopped in the driving lane. The front right fender of Collins's car was damaged and his right front tire was punctured.

When shown the video at trial, Black stated that it reflected what the drivers told him. He also observed that the Collins car was two or three car spaces away when Creighton began to back up. Black could not see that Collins made any significant or major moves to avoid Creighton's truck. Instead it appeared that Collins kept going straight and made no effort to stop.

Jones testified initially that she saw the collision while out in the parking lot writing tickets. She further stated that Collins told her and Black that he didn't see Creighton backing out because he was looking at the building to see if his wife had come out. She recounted hearing a conversation between Collins and his wife in which Ms. Collins said they had just gotten the car fixed from him having a previous accident and Collins said he was sorry, he hadn't been paying attention, and he was looking for her. However, under questioning by Collins's counsel, it was

10

determined that the video of the accident did not show Jones where she claimed to have been at the time the accident occurred.

Ms. Collins testified that she walked over to the accident scene after learning about the collision. She said she was upset about having to deal with the insurance company again so soon after her husband's July 2016 accident. She admitted making statements to that effect but denied telling her husband that she told him to "pay attention." While she denied speaking to Jones at the accident scene, she did recall seeing her there.

*Discussion*

The most recent and most comprehensive discussion of liability in parking lot collisions is found in *Lawrence*, *supra*, which sets forth the duties of both drivers:

> [W]e find that the reasonably expected speed and movement of vehicles in a parking lot and the utility of closely configuring the parking spaces make the duty of the driver of the parked vehicle something less than these statutory duties imposed for highway traffic. Parked vehicles of varying shapes and sizes are closely aligned in a parking lot. The field of vision of the driver backing out of the parking space is expected to be impeded or even blocked altogether as initial movement of the vehicle begins. The vehicle's brake and backup lights serve as reasonable notice to oncoming traffic so long as the driver backs out very slowly and occasionally stops so that the lights and minor movement can be readily observed. On the other hand, drivers moving through the parking lot have the paramount duty of attentiveness and maintaining a low vehicle speed because of other cars and pedestrians. In contrast to the highway driver with the right-of-way, one expects that vehicles in a parking lot will be backing up slowly into the travel lane with visibility somewhat impaired for the driver. This action is expected to cause minor interference with the movement of the oncoming traffic. The key safety factor for both drivers is a greatly reduced level of speed, enabling the driver in the travel lane with unimpaired vision either to stop, maneuver around or sound the horn to avoid a potential collision. Accordingly, we do not find that the statutory duties of the Louisiana Highway Regulatory Act strictly govern this setting.

11

As a driver backing up her vehicle, Groan's duty required a slow, halting motion. Yet that duty did not require that she must initially see the oncoming traffic. Brown's duty to exercise much caution while driving behind parked vehicles encompassed the risk that a vehicle would begin slowly backing out from a parking slot. In that event, such duty required him to yield or at least insure that Groan's vehicle stopped. As such, we define Brown's duty not as an accommodation for Groan's negligence. Instead, his duty is designed to guard against a foreseeable risk resulting from the confinement of parked vehicles in the lot. While the key factor of speed might result in the breach of both drivers' duties and concurrent negligence, a finding of complete fault attributable to either driver is a possibility depending upon the facts of each case.

We find that the trial court committed legal error in its application of the duties owed by the respective drivers.[2] It imposed a "tremendous burden" upon the backing driver (the person more likely to have an impaired view and, thus, the lesser ability to fully gauge the situation) and required him to be "absolutely certain" that he could "fully negotiate the backward movement before proceeding forward," while apparently imposing no duty upon the driver in the travel lane (who had an unobstructed view and, consequently, the superior ability to assess the situation). As a result, the duty placed upon Creighton by the trial court greatly exceeded that set forth in the *Lawrence* case. This legal error was prejudicial to the defendants because it materially affected the outcome and deprived them of substantial rights. Finding that this legal error interdicted the fact-finding process, we are compelled to hold that the manifest error standard of review is

---

[2] In addition to applying the wrong legal standard when ruling from the bench on the liability determination, the trial court's misunderstanding of the applicable law occurred elsewhere on the trial transcript. During the trial, the trial court noted on the record:

What this case revolves around is one issue in the Court's mind. Was there due diligence and care taken prior to the parties [sic] backing the vehicle out. And, that's all that it is in the Court's mind, and either there was due diligence taken or it wasn't. I think we all understand that the owner, you know, is the only person who's backing and either you were careful before you proceeded backwards or you weren't. And, that's it.

12

inapplicable. Since the record is complete, we are required to undertake a *de novo* review.

The most compelling evidence in the record is the video of the accident itself. The accident was captured on the campus video surveillance system, and a copy of the video was admitted at trial. Our review of the video (and a large aerial photo admitted into evidence) reveals that the campus parking lot was huge, containing hundreds of vehicles, and that the lanes behind the rows of parked vehicles were more than adequate for two-way travel. The recording shows Collins's car enter the parking lot and begin going down the row where Creighton's truck was parked. The spot next to Creighton which was occupied by the SUV is visible. There is a tree which partially or totally obstructs the view of the three parking spots on the other side of the SUV. Creighton's truck begins backing up and then stops abruptly when Collins's car is at least two parking spots away. The back of Collins's car is still visible behind the tree when the truck begins to move. Collins's car continues forward without any deviation in its course. Suddenly Creighton's truck rocks, indicating contact between the vehicles. The photos of the damage to the Collins car confirm the testimony that the only contact between the vehicles was between Creighton's trailer hitch and the front passenger side of the Collins car in front of the tire well and then the tire, which was punctured.

In the *Lawrence* case, this court acknowledged that the driver backing out of a parking space is expected to have an impeded or blocked view when the car initially moves. Such was the case here for Creighton as the SUV beside his truck blocked his view when he first began to back up. As further stated in *Lawrence*, *supra*, a vehicle's brake and backup lights serve as

13

"reasonable notice to oncoming traffic so long as the driver backs out very slowly and occasionally stops so that the lights and minor movement can be readily observed." Creighton testified that he backed up slowly, riding his brake, until he could see oncoming traffic. He testified without contradiction that his brake and backup lights were working that day. As soon as he was in a position to see oncoming traffic, he observed the Collins vehicle heading toward him and he immediately stopped. Based upon our review of the testimony, which was corroborated by the video, Creighton fulfilled his duty to act as a cautious driver while attempting to back out of his parking space. Even Collins was unable to specify any act of negligence by Creighton when asked to do so by defendants' counsel, stating he was "not an expert."

As previously noted, *Lawrence* placed upon a driver moving through a parking lot, like Collins, "the paramount duty of attentiveness and maintaining a low vehicle speed." That low speed enables "the driver in the travel lane with unimpaired vision either to stop, maneuver around or sound the horn to avoid a potential collision." Collins took none of those actions. Also, despite his trial testimony that he was going only 10 to 15 mph, he informed his chiropractor that he was traveling 20 mph. His "duty to exercise much caution while driving behind parked vehicles encompassed the risk that a vehicle would begin slowly backing out from a parking slot" and required him to yield or at least ensure that the backing vehicle stopped. The video shows that he was at least two parking spaces away when Creighton began to back up, a fact he refused to acknowledge even when shown the video. Although the accident happened quickly, within seconds, Collins made no effort to avoid the other vehicle.

14

Our *de novo* review of the record – which included such objective evidence as the accident video and the photographs of the parking lot and the vehicles – demonstrates that Creighton did all that was required of him by *Lawrence*, *supra*. He began to cautiously back up and immediately stopped when he saw the Collins car.[3]

Based on the foregoing, we find that the trial court erred in finding that the plaintiff carried his burden of proving that the defendant driver was at fault in causing the collision. Accordingly, we reverse the city court judgment and dismiss Collins's claims against the defendants.[4]

## CONCLUSION

As set forth above, the city court judgment in favor of the plaintiff, Carl Collins, and against the defendants, David Creighton and State Farm Mutual Automobile Insurance Company, is reversed. Costs of this appeal are assessed to the plaintiff, Carl Collins.

**REVERSED.**

---

[3] Ironically, when Collins was questioned about his July 2016 Walmart accident, he insisted that the other driver was at fault when he (Collins) acted in the exact same manner that Creighton did in the instant case. Collins testified that he was backing up, saw the other car, stopped, and was then hit by the other driver who failed to stop.

[4] Even assuming *arguendo* that the manifest error standard of review was applicable, the facts of this case are such that we would be compelled to reverse. The objective evidence in this record simply does not support a finding of any negligence on Creighton's part and such a ruling would be manifestly erroneous.